*In re* MARRIAGE OF RONALD F. ROEHN, Petitioner-Appellant, and LINDA L. ROEHN, Respondent-Appellee.

Second District   No. 2—90—1259

Opinion filed July 26, 1991.

LeRoy W. Gudgeon, of Northfield, for appellant.

Neal W. Cerne, of Mirabella & Kincaid, of Wheaton, for appellee.

John F. Kelly, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for *amicus curiae* Lisle-Woodridge Fire Protection District Fire Department.

JUSTICE BOWMAN delivered the opinion of the court:
Petitioner, Ronald F. Roehn, appeals the trial court's grant of a motion by respondent, Linda F. Roehn, to enforce the marital settlement agreement embodied in the judgment dissolving the parties' marriage. The trial court entered a qualified domestic relations order (QDRO) pursuant to section 1056(d)(3) of the Retirement Equity Act of 1984 (Act) (29 U.S.C.A. §1056(d)(3) (West 1985)). The QDRO provides that respondent will receive a portion of petitioner's pension benefits directly from the pension fund of his employer, the Lisle-Woodridge Fire Protection District Fire Department. On appeal, petitioner argues that the QDRO was not authorized by either the Act or article 4 of the Illinois Pension Code (Code) (Ill. Rev. Stat. 1989, ch. 108½, par. 4—101 *et seq.*). We agree. We therefore reverse and remand.
Petitioner and respondent were married on October 18, 1969. On May 18, 1989, petitioner filed his petition for dissolution of the marriage, and on July 14, 1989, respondent filed a counterpetition for dissolution. On December 6, 1989, the trial court entered a judgment for dissolution embodying the parties' marital settlement agreement. Par-

agraph 16 of the judgment specified that the parties would equally divide pension benefits that petitioner had accrued from the Lisle-Woodridge Firefighters' Pension Fund (the Fund) during the marriage and that the benefits flowing to the wife were to be "set forth in a qualified domestic relation [*sic*] order."

Respondent subsequently moved to enforce paragraph 16 of the judgment of dissolution. She prayed that the court enter a QDRO or, in the alternative, determine the present value of petitioner's pension plan. She attached a proposed QDRO with the motion. Petitioner replied that his pension benefits could not be the subject of a QDRO because the Fund, as a "governmental plan," was exempt from the provisions of the Act (see 29 U.S.C.A. §§1002(32), 1003(b)(1) (West 1985)).

The court granted respondent's motion. In its supplemental judgment order, the court stated that in order to give effect to the division of marital property set forth in the judgment of dissolution, it was entering a QDRO according to section 1056(d)(3) of the Act (29 U.S.C.A. §1056(d)(3) (West 1985)). The order made respondent an "alternate payee" as defined by that section of the Act and thereby assigned her a portion of the benefits to which petitioner had acquired a right during the marriage.

In explaining his decision to enter the QDRO, the trial judge expressed his belief, contrary to petitioner's assertions, that the court had the authority to assign a portion of petitioner's pension rights to respondent. The judge expressed some uncertainty about whether the Fund could be required to pay respondent directly, but told respondent's attorney that "[i]f they don't and they advise you that they don't, I'll tell you again you can file a motion before me and I will direct [petitioner] when he receives the funds to pay that portion he's supposed to pay [respondent]." Petitioner then brought this appeal.

Petitioner argues, as before, that neither the Federal Act nor the State Code authorized the trial court in this dissolution proceeding to require the Fund to pay a portion of petitioner's future pension benefits directly to respondent. He maintains that the QDRO is therefore invalid even though the parties stipulated to it as part of the settlement agreement.

We have granted the Lisle-Woodridge Fire Department (Department) leave to appear as *amicus curiae*. The Department also argues that the QDRO is unauthorized by Federal or State law. Finally, respondent has moved to confess error, conceding that the Fund is not subject to the provisions of a QDRO.

We agree with the parties and the Department that the court lacked authority to enter the QDRO. The court could not order the Fund to pay any of petitioner's benefits directly to the nonemployee respondent. However, under settled Illinois law, the court may in its discretion require that petitioner pay an allocated share of future pension benefits, as those benefits are disbursed, to respondent. We therefore reverse and remand for further proceedings on respondent's motion to enforce the dissolution judgment. In so doing we grant respondent's motion insofar as it confesses error but deny her request to dismiss the appeal without prejudice.

The trial court's purported authority for the QDRO was section 1056(d)(3) of the Act, which authorizes State domestic relations courts to enter QDROs as an exception to the general provision, contained in section 1056(d)(1) of the Act, that benefits under pensions covered by the Act may not be assigned or alienated (29 U.S.C.A. §§1056(d)(1), (d)(3) (West 1985)). However, the Act is simply irrelevant to this case. The Act expressly does not apply to any governmental pension plan (29 U.S.C.A. §1003(b)(1) (West 1985)). A pension plan established or maintained by a political subdivision, agency or instrumentality of a State government is a "governmental plan" (29 U.S.C.A. §1002(32) (West 1985)). The Fund is plainly outside the reach of the Act.

■■ The Federal statute therefore provides no escape from the established rule in Illinois that a court may not order a pension plan established under the Code to pay benefits directly to a nonemployee divorced spouse. (*In re Marriage of Johnston* (1990), 206 Ill. App. 3d 262, 268-69 (Rizzi, J., specially concurring); *In re Marriage of Papeck* (1981), 95 Ill. App. 3d 624.) The Code does not provide for QDROS. (Ill. Rev. Stat. 1989, ch. 108½, par. 101—1 *et seq.*; *Johnston*, 206 Ill. App. 3d at 266 (Rizzi, J., specially concurring).) Article 4 of the Code, involved here, provides only that "[a] *firefighter*" upon retirement "shall receive a monthly pension." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 108½, par. 4—109(a).) Although article 4 also provides for payments to a surviving spouse (Ill. Rev. Stat. 1989, ch. 108½, par. 4—114(a)), a spouse whose marriage to a covered employee has been dissolved is not a "surviving spouse." *In re Marriage of Hannon* (1991), 207 Ill. App. 3d 329.

■■ ■ We therefore hold that the trial court lacked authority to enter the QDRO. However, on remand the court may order (as the trial judge foresaw doing even under the QDRO) that petitioner pay to respondent an allocated share of pension benefits that he will receive.

Petitioner's future benefits from the Fund are a form of deferred compensation and therefore property. (*In re Marriage of Hackett* (1986), 113 Ill. 2d 286, 292-93.) Insofar as petitioner's beneficial interest in the Fund was acquired during the marriage, respondent upon dissolution of the marriage became a co-owner of the pension benefits as marital property. *Hackett*, 113 Ill. 2d at 292; *Papeck*, 95 Ill. App. 3d at 629.

In allocating this form of marital property, a trial court may in its discretion order the employee spouse to pay a certain portion of the benefits, as disbursed, to the nonemployee spouse, while retaining jurisdiction to enforce the decree. (*In re Marriage of Wiley* (1990), 199 Ill. App. 3d 169, 177; *In re Marriage of Degener* (1983), 119 Ill. App. 3d 1079, 1082.) Alternatively, the court may determine the present value of the pension benefits, award the benefits to petitioner, and offset this amount with other marital property of similar value. (*In re Marriage of Johnston* (1990), 206 Ill. App. 3d 262, 269 (Rizzi, J., specially concurring); *Wiley*, 199 Ill. App. 3d at 177.) As the marital property has already otherwise been allocated, this latter approach would not seem desirable, particularly as the "reserved jurisdiction" approach is more in line with the basic intention of the court and petitioner's retirement does not appear imminent. (*Wiley*, 199 Ill. App. 3d at 179.) We note, however, that in contrast to the QDRO, under the "reserved jurisdiction" approach respondent will receive an allocated portion of petitioner's benefits as those benefits are disbursed to petitioner, and not at some earlier date (such as the earliest date under which petitioner could elect to receive benefits).

In sum, respondent may be awarded a portion of petitioner's retirement benefits, but the payments must go triangularly from the Fund to petitioner to respondent—not in a straight line from the Fund to respondent.

The judgment of the circuit court of Du Page County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

DUNN and WOODWARD, JJ., concur.