*In re* MARRIAGE OF TARA MENKEN, Petitioner-Appellee, and GEORGE MENKEN, Respondent-Appellant.

Second District   No. 2—01—0610

Opinion filed October 3, 2002.

Barbara Giorgi Vella, of Vella, Sparkman, Wheeler & Lund, P.C., of Rockford, for appellant.

Deron R. Benson, of Gilbert & Benson, P.C., of Rockford, for appellee.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

After a trial, the trial court dissolved the marriage of petitioner, Tara Menken, and respondent, George Menken, awarded maintenance and child support, and divided the marital assets. The court awarded petitioner, among other things, 60% of the retirement benefits respondent earned as a member of the Rockford police department. On appeal, respondent contends that the trial court lacked the authority to order him to sign a consent form authorizing petitioner to receive

the retirement benefits directly pursuant to a qualified Illinois domestic relations order (QILDRO). See 40 ILCS 5/1—119(b)(1) (West 2000). We vacate the order requiring respondent to sign the consent form and affirm in all other respects.

The parties were married on August 4, 1973. Respondent had been a member of the Rockford police department since January 1977 and participated in the Rockford Police Pension Fund. At the time of the trial, the value of respondent's pension was approximately $2,250 per month.

On December 5, 2000, the trial court issued its memorandum decision awarding petitioner "60% of [respondent's] retirement benefits, which is $1,350.00 per month, *** to be distributed to [petitioner] pursuant to a QILDRO providing [respondent] agrees to sign an appropriate consent form, however, this is continued *** for further hearing." In the portion of the memorandum decision addressing attorney fees, the court stated:

"Should [respondent] agree to sign the appropriate consent to distribute his pension pursuant to a QILDRO, the Court may not order [respondent] to pay [petitioner's] entire attorneys fees and costs, and instead may or may not order [respondent] to contribute any sums to [petitioner.] However, should [respondent] refuse to sign said consent, the Court may order [respondent] to pay *all* of [petitioner's] attorneys fees as determined by the hearing to be reasonable and customary within the community." (Emphasis in original.)

During a hearing on February 1, 2001, respondent's counsel indicated that respondent had decided not to sign a QILDRO consent form.

On February 15, 2001, the trial court entered a judgment dissolving the parties' marriage, awarding maintenance and child support, and dividing the marital property in accordance with the findings in the memorandum decision. Also on that date, the court conducted a hearing and awarded petitioner $6,500 toward her attorney fees and ordered respondent to pay petitioner, upon his retirement and within 10 days of receiving his monthly pension benefits, $1,350 per month.

On March 14, 2001, respondent moved to reconsider the trial court's attorney fees award. Respondent asserted that the fee award was not based on the proper statutory factors but instead was punishment for respondent's refusal to consent to a QILDRO.

During the hearing on the motion to reconsider, the trial court stated:

"[T]he court has done some research concerning these QILDROs, and there is no case that's available as to whether or not the court can order *** a participant to sign a consent form. Therefore, on

motion of the court, the court is ordering [respondent] to sign the consent form ***.

And, in view of that, the court is modifying the judgment order which would reduce attorneys' fees *** from $6,500 to $5,000."

The trial court entered an order reflecting these findings. The court stayed the enforcement of the order requiring respondent to sign the consent form, and respondent timely appealed.

Initially, we note that petitioner has not filed an appellee's brief. Because the record is not long and the legal issue raised on appeal can be decided without the aid of an appellee's brief, we will address the merits. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

This appeal requires us to examine section 1—119 of the Illinois Pension Code (Code), which created the QILDRO. 40 ILCS 5/1—119 (West 2000). Respondent contends that the trial court lacked the authority to order him to consent to a QILDRO under section 1—119 of the Code.

■ It is well settled that pension benefits earned during the marriage are considered marital property and, upon dissolution, are subject to division like any other property. *In re Marriage of Abma*, 308 Ill. App. 3d 605, 615 (1999); see also 750 ILCS 5/503(b)(2) (West 2000). Before July 1, 1999, which was the effective date of section 1—119, no statute in Illinois authorized a domestic relations court to order the payment of a governmental pension benefit to a person other than the regular payee. *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 301 (2000). However, section 1—119 now provides for QILDROs, and states as follows:

"An Illinois court of competent jurisdiction in a proceeding for *** dissolution of marriage that provides for the distribution of property *** may order that all or any part of any (i) retirement benefit or (ii) member's refund payable to or on behalf of the member be instead paid by the retirement system to a designated alternate payee." 40 ILCS 5/1—119(b)(1) (West 2000).

Respondent's objection to the trial court's order is based on section 1—119(m), which provides:

"(1) In accordance with Article XIII, Section 5 of the Illinois Constitution, which prohibits the impairment or diminishment of benefits granted under this Code, a QILDRO issued against a member of a retirement system established under an Article of this Code that exempts the payment of benefits or refunds from attachment, garnishment, judgment or other legal process shall not be effective without the written consent of the member if the member began participating in the retirement system on or before the effective date of this Section. ***

(2) A member's consent to the issuance of a QILDRO shall be irrevocable, and shall apply to any QILDRO that pertains to the alternate payee and retirement system named in the consent." 40 ILCS 5/1—119(m) (West 2000).

It appears that no court has had an occasion to interpret section 1—119 of the Code. In interpreting section 1—119, our primary goal is to ascertain and give effect to the intent of the legislature. *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). The best evidence of legislative intent is the statute's language, which must be given its plain and ordinary meaning. *Kates*, 198 Ill. 2d at 163.

■ We find that the language of section 1—119(m)(1) is clear. This statutory language plainly indicates that, absent the pensioner's consent, section 1—119's effect on pension rights is to be applied prospectively. Before section 1—119's enactment, a trial court in a dissolution of marriage proceeding could not order a governmental pension fund to distribute benefits directly to an alternate payee. See *In re Marriage of Roehn*, 216 Ill. App. 3d 891, 895 (1991) (holding that, in cases involving governmental pensions, although a spouse may be awarded a portion of the other spouse's retirement benefits, the payments must go "triangularly" from the retirement fund to the retiree to the spouse). Now, a QILDRO may be issued against an individual participating in a retirement system on or before the effective date of section 1—119 only if the individual consents.

This consent provision apparently was included to protect a pensioner's rights under article XIII, section 5, of the Illinois Constitution, which provides that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5. The contractual relationship is governed by the terms of the Code at the time the employee becomes a member of the pension system. *People ex rel. Sklodowski v. State*, 182 Ill. 2d 220, 229 (1998). Because section 1—119(m)(1) was motivated by an intent to protect a pensioner's constitutional rights, any attempt to diminish its effect should not be taken lightly. Accordingly, we hold that the trial court did not have the authority to order respondent to execute a QILDRO consent form.

There is no dispute that respondent began participating in the Rockford Police Pension Fund before the effective date of section 1—119 of the Code. Section 3—144.1 of the Code exempts police pension benefits from attachment, garnishment, or other legal process. 40 ILCS 5/3—144.1 (West 2000). Therefore, under section 1—119(m)(1), the trial court could not issue a QILDRO against respondent's pension

benefits unless respondent consented to it. Respondent did not want to sign a consent form, and the trial court ordered him to do so. If we were to allow the trial court's order to stand, the consent requirement of section 1—119(m)(1) would be rendered meaningless. This is a result that we must avoid. *Kates*, 198 Ill. 2d at 163.

In holding that the trial court lacked the authority to order respondent to execute the consent, we emphasize that a trial court in a dissolution of marriage proceeding retains its authority to divide pension benefits like any other marital property. Our ruling affects only how the property division is executed. Although the trial court cannot force respondent to consent to a QILDRO, the court retains jurisdiction to enforce its orders. *Smithberg*, 192 Ill. 2d at 297-98. The trial court here had the authority to order that petitioner receive her share of respondent's pension benefits "triangularly." See *Roehn*, 216 Ill. App. 3d at 895. If respondent failed to comply with such an order, the court could use its contempt powers to compel compliance. *Smithberg*, 192 Ill. 2d at 298.

Although the issue is not before us, we feel compelled to note that the trial court should not have conditioned the amount of attorney fees on whether respondent signed the consent form. The issues were unrelated, and the device was an improper attempt to coerce respondent and bypass section 1—119(m)(1). However, because petitioner has not cross-appealed the order reducing the attorney fee award from $6,500 to $5,000, that order remains undisturbed.

The part of the judgment of the circuit court of Winnebago County ordering respondent to consent to the entry of a QILDRO is vacated, and the court's original order providing for indirect payments to petitioner is reinstated. The remainder of the judgment is affirmed.

Affirmed in part and vacated in part.

GEIGER and BOWMAN, JJ., concur.