**FIRST DIVISION**
November 24, 2008

No. 1-07-0619

| | | |
|---|---|---|
| *In re* THE MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| ANA L. WINTER, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 98 D 11073 |
| | ) | |
| JEROME WINTER, | ) | |
| | ) | |
| Respondent-Appellant | ) | The Honorable |
| | ) | Mark Lopez, |
| (Public School Teachers' Pension and | ) | Judge Presiding. |
| Retirement Fund of Chicago, | ) | |
| Intervenor). | ) | |

JUSTICE GARCIA delivered the opinion of the court.

In 2005, a judgment of dissolution of marriage was entered providing for the division of the marital portion of the respondent's pension from the Public School Teachers' Pension & Retirement Fund of Chicago. However, the respondent, a resident of England, failed to direct the Pension Fund to pay the petitioner her share of the marital portion of the pension. In 2006, the petitioner filed a petition seeking a "freeze" on the respondent's pension payments until she was paid her share in accordance with the dissolution judgment. The circuit court entered injunctive relief against the Pension Fund.

In this interlocutory appeal, we must now answer whether the circuit court had authority to enter an order against the public pension fund directing that the member's benefits be paid to a third-party trustee, without a qualified Illinois domestic relations order (QILDRO). As a preliminary question, we must answer whether the trustee and pension fund, both nonparties, were entitled to prior notice and the opportunity to be heard before the petitioner could be granted relief.

We hold that under the unusual facts of this case, the trustee and the pension fund were not entitled to prior notice and an opportunity to be heard before preliminary injunctive relief was granted. Because the record supports the circuit court's determination that no other effective relief was available, we conclude the circuit court properly exercised its broad equity powers to order the pension fund to issue the pension checks in care of the trustee. We find no authority, however, to support that portion of the circuit court's order directing that the checks be made payable to the trustee. Accordingly, we affirm in part, vacate in part, and remand with instructions.

BACKGROUND

The petitioner, Ana L. Winter, and the respondent, Jerome Winter, were married in 1980 and separated in 1998. On February

No. 1-07-0619

25, 2005, the circuit court entered a judgment dissolving the parties' marriage. No appeal was taken.

The dissolution judgment reflects the trial court's difficulty in dividing the marital assets. The majority of the documentation that would have aided the court in identifying and valuing the assets was with Mr. Winter in England, where he "fled" with the parties' child. Mr. Winter had been "wholly responsible for the parties' financial matters during the marriage."

Mr. Winter was represented by counsel in the dissolution action, but never personally appeared in court, presented testimony or gave a deposition. The trial court entered various orders directing Mr. Winter to provide specific documentation regarding the marital assets. The trial court rejected the majority of Mr. Winter's responses as self-serving and irrelevant.

The trial court divided those marital assets it could identify, including Mr. Winter's pension with the Public Teacher's Pension and Retirement Fund of Chicago (Pension Fund). The judgment provides,

>"17. ANA is further awarded the marital
>portion of JEROME's pension with the [Pension
>Fund]. ANA's marital portion shall be

**3**

>divided by a qualified domestic relations
>
>order.[1]  JEROME shall obtain the necessary
>
>documents from the Pension Administrator in
>
>order to enter the qualified domestic
>
>relations order."

The trial court reserved jurisdiction for all postjudgment proceedings.

On February 21, 2006, Ms. Winter filed a "Petition to Freeze Pension Funds."  Ms. Winter alleged Mr. Winter was receiving pension funds but she was not because Mr. Winter had failed to submit the necessary documents for the entry of the QDRO in violation of the dissolution judgment.  Ms. Winter requested the court freeze Mr. Winter's pension "until the required documents are executed for Ms. Winter to receive her fair share," "until further order of court," or "until the Court determines the

---

[1]  Because the pension fund involved is a public fund, the judgment incorrectly identified the order as a "qualified domestic relations order" (QDRO).  See In re Marriage of Carlson, 269 Ill. App. 3d 464, 466-67, 646 N.E.2d 321 (1995) (explaining a QDRO is "a creature" of the federal Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 et seq. (1988)) and does not apply to public pension plans).

extent that Jerome's share should be paid to Ana."

In August 2006, Mr. Winter filed his "Response to Petition to Freeze Pension Funds." In his response, Mr. Winter admitted he was receiving payments from the Pension Fund and that Ms. Winter was not. Mr. Winter argued that a "freeze" would diminish or impair his pension, which is protected against such actions by the Illinois Constitution and Pension Code (40 ILCS 5/1-101 et seq. (West 2006)). Mr. Winter argued that the Constitution and Pension Code deprived the trial court of authority to enjoin the Pension Fund, a nonparty. Finally, Mr. Winter argued the dissolution judgment was unenforceable as his pension is not subject to a QDRO.

On February 2, 2007, in an eight-page ruling, which forms the basis of this appeal, the trial court amended the dissolution judgment to reflect a QILDRO, applicable to public pensions, while retaining Mr. Winter's judgment obligation to obtain the necessary documents from the Pension Fund for the entry of such an order. The court recognized that because Mr. Winter's membership in the Pension Fund predated the enactment of section 1-119 of the Pension Code (40 ILCS 5/1-119 (West 2006)), which provides for QILDROs, Mr. Winter's consent was required before a QILDRO could be entered. See In re Marriage of Menken, 334 Ill. App. 3d 531, 778 N.E.2d 281 (2002).

The trial court also discussed the "triangular approach" used to ensure a former spouse's receipt of a portion of pension benefits as marital property to which the former spouse is entitled. See, e.g., In re Marriage of Roehn, 216 Ill. App. 3d 891, 895, 576 N.E.2d 560 (1991). Under this approach, the payment of pension benefits from the fund to the member is unaffected; the focus is on the member's obligation to pay the former spouse her share of the pension benefits directly in accordance with the dissolution judgment. Compliance is compelled through the court's contempt powers. The trial court concluded the triangular approach as it was approved in Roehn was unworkable because Mr. Winter was a permanent resident of England, having never personally participated in the litigation. The court lacked "any hope that Jerome will ever set foot in the State of Illinois again."

Because the entry of a QILDRO was not possible without Mr. Winter's consent and the court's contempt powers could not reach Mr. Winter in England, the trial court concluded "Ana ha[d] no adequate remedy at law" and "the entry of injunctive relief" was appropriate. The court's order provides,

> "11. Accordingly, given the constraints
> under which this Court is required to comply
> both by statute and case law in providing

relief to Ana in obtaining the marital portion of Jerome's pension[,] [t]he Court finds that injunctive relief be ordered against the 'Pension Fund' from issuing any future pension benefits payments directly to Jerome. Additionally, this Court orders the 'Pension Fund' to send all future payments of Jerome's pension benefits to Richard H. Marcus, as attorney and trustee for Jerome, until further order of this Court.

12. Attorney Marcus shall then deposit all sums received from the 'Pension Fund' directly to his 'IOLTA' account pending further order of this court."

In a later portion, the court orders:

"1. [The Pension Fund] is enjoined from issuing any further pension benefits to Jerome Winter until further order of this Court.

2. That Jerome is enjoined from transferring, encumbering, or receiving any lump sum payments or otherwise modifying his pension benefits from the [Pension Fund]

**7**

without leave of this Court.

> 3. The [Pension Fund] shall issue all of Jerome's future pension benefit payments payable to Richard H. Marcus as attorney and trustee for Jerome Winter." (Emphasis added.)

After Mr. Winter timely filed a notice of appeal, the Pension Fund filed a motion to intervene in the trial court. The trial court dismissed the motion for lack of jurisdiction. After briefs were filed here, we granted the Pension Fund's motion to intervene.

## ANALYSIS

### I. Sufficiency of the Record

We first address Ms. Winter's contention that the record before us is insufficient to decide the merits of the appeal and therefore the appeal must be dismissed. Ms. Winter argues the absence of a transcript or bystander's report of the trial court proceedings below means we must presume the trial court's ruling was correct, citing Foutch v. O'Bryant, 99 Ill. 2d 389, 459 N.E.2d 958 (1984), as authority.

We disagree. In Foutch, the supreme court addressed whether there is a "sufficiently complete record of the proceedings at trial to support a claim of error." (Emphasis added.) Foutch, 99

Ill. 2d at 391-92.  The sufficiency of the record to address a claim of error turns on the question presented on appeal.  In Foutch, the question was whether the trial court abused its discretion in denying the motion to vacate an ex parte judgment. Foutch, 99 Ill. 2d at 391-92.  Absent a transcript of the hearing below where evidence was heard, review for an abuse of discretion of the trial court's denial of the motion, where no specific grounds for the denial were given, was foreclosed.  Foutch, 99 Ill. 2d at 392.

In this case, the trial court's written order sets forth its reasoning.  Further, because we determine the central issue-- whether the circuit court has authority to order the Pension Fund to send payments to a trustee--presents a question of law, our review is de novo.  In re Marriage of Best, 228 Ill. 2d 107, 116, 886 N.E.2d 939 (2008) (questions of law are reviewed de novo). The record here is sufficiently complete to address the merits of the appeal; Foutch is not controlling.

## II. Injunctive Relief Against Nonparties

### A. *Preliminary Injunction*

Mr. Winter contends the relief granted was "defective as a matter of law" because it is not clear whether it is in the nature of "a temporary restraining order, preliminary injunction or permanent injunction."  Ms. Winter asserts it is a permanent

No. 1-07-0619

injunction.

An injunction is an equitable remedy that requires the person " 'to whom it is directed to do or refrain from doing a particular thing.' " In re A Minor, 127 Ill. 2d 247, 261, 537 N.E.2d 292 (1989), quoting Black's Law Dictionary 705 (5th ed. 1983). The trial court's order prohibited the Pension Fund from paying benefits to Mr. Winter and mandated that the Pension Fund send Mr. Winter's pension benefits to attorney Marcus, payable to Mr. Marcus as trustee of Mr. Winter. The order imposed a constructive trust over the pension benefits.

The order makes clear that the injunction is not permanent in nature. "A permanent injunction is of unlimited duration and 'alters the status quo,' meaning that it adjudicates rights between the interested parties." Skolnick v. Altheimer & Gray, 191 Ill. 2d 214, 222, 730 N.E.2d 4 (2000), citing Smith v. Goldstick, 110 Ill. App. 3d 431, 438, 442 N.E.2d 551 (1982). As Mr. Winter asserts, the order does not provide a final resolution of the claims at issue; at some point the collected funds must be disbursed. We agree. The injunctive relief granted is preliminary in nature, subject to further proceedings before the trial court as provided in the order. This is consistent with the appeal arising under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)), which provides for review of interlocutory

**10**

injunctions. See Skolnick, 191 Ill. 2d at 222 (permanent injunctions not appealable under Rule 307).

A domestic relations court is authorized to enter preliminary injunctions during dissolution proceedings in order to preserve the status quo of the marital estate. 750 ILCS 5/501(a) (West 2006); In re Marriage of Hartney, 355 Ill. App. 3d 1088, 1089, 825 N.E.2d 759 (2005). A preliminary injunction is proper where (1) the moving party has a clear and ascertainable right in need of protection, (2) the moving party will suffer irreparable harm without relief, (3) there is no adequate remedy at law, and (4) there is a substantial likelihood the moving party will succeed on the merits of the case. Hartney, 355 Ill. App. 3d at 1089.

Mr. Winter argues the court's order is an improper preliminary injunction because (1) it alters the status quo, and (2) it does not provide for a hearing and final disposition on the merits.

In Illinois, " '[t]he status quo to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy.' " In re Marriage of Petersen, 319 Ill. App. 3d 325, 336, 774 N.E.2d 877 (2001), quoting Postma v. Jack Brown Buick, Inc., 157 Ill. 2d 391, 397, 626 N.E.2d 199 (1993).

**11**

No. 1-07-0619

Setting aside the highly contested proceedings that preceded the entry of the judgment of dissolution of marriage, without an appeal following the entry of the judgment, the rights of the parties embodied in the judgment are uncontested. Mr. Winter's pension benefits earned during the course of the marriage are marital property.

Mr. Winter is entitled to his pension benefits no more so than Ms. Winter is entitled to her share of Mr. Winter's pension benefits awarded to her as marital property. But as Mr. Winter conceded in his response to the petition to freeze, he was receiving pension benefits, Ms. Winter was not. It is the "status quo" at the time of the entry of the dissolution of marriage that the circuit court's order sought to maintain by its February 2007 order. See Petersen, 319 Ill. App. 3d at 337 (status quo to be maintained is "the prevention of dissipation or destruction" of marital property). By enjoining the Pension Fund from paying Mr. Winter benefits, a portion of which he is not entitled to, and ordering the benefits be kept in trust until the benefits can be apportioned between the co-owners, the court prevented Mr. Winter from dissipating assets previously adjudicated to be marital property. In accordance with the judgment of dissolution of marriage, a portion of Mr. Winter's pension benefits as marital property is now separately owned by

**12**

Mr. Winter and Ms. Winter. The manner of dividing that separately owned property remains to be resolved.

Accordingly, we reject Mr. Winter's argument that the court's order fails because it grants an injunction "for an indefinite period of time without providing a mechanism for a hearing and final disposition." The trial court ordered attorney Marcus to act as a trustee "pending further order." Further proceedings are intended and, but for this interlocutory appeal by Mr. Winter, might well have concluded.

### B. *Relief Against Nonparties*

Mr. Winter contends the trial court lacked authority to issue injunctive relief against attorney Marcus and the Pension Fund because both are nonparties to the litigation. Ms. Winter questions Mr. Winter's standing to assert the interests of attorney Marcus and the Pension Fund and points out that neither attorney Marcus nor the Pension Fund filed a notice of appeal.

Section 11-102 of the Code of Civil Procedure prohibits the grant of a preliminary injunction without notice of the application to "the adverse party." 735 ILCS 5/11-102 (West 2006). In this case, there is no question that Mr. Winter is the "adverse party" and that he was served notice of Ms. Winter's petition to freeze his pension funds. Under section 11-102, the issue becomes whether the Pension Fund should be deemed an

**13**

"adverse party," entitling it to notice of the application for injunctive relief.[2]

Ms. Winter argues the Pension Fund cannot be an adverse party because it cannot sue or be sued and therefore is not entitled to notice.  See In re Marriage of Krane, 288 Ill. App. 3d 608, 681 N.E.2d 609 (1997).  In Krane, this court struck provisions in a judgment of dissolution of marriage that directed the same pension fund involved in this case to give notice to the former spouse, a nonmember of the fund, of any change in "the depository of *** pension payments and *** any cost of living adjustment in the pension payments."  Krane, 288 Ill. App. 3d at 618.  We reasoned the fund was "not an individual or municipal corporation, but merely an aggregation of assets; there [was] no statutory provision for the [f]und to sue or be sued."  Krane, 288 Ill. App. 3d at 618.

While the Pension Fund itself may not sue or be sued, it is clear that the proper party here is "the Board of the Fund."  40 ILCS 5/17-147 (West 2006) ("Any legal proceedings necessary for

---

[2] Because the Pension Fund and attorney Marcus occupy the same position as nonparties to the litigation and attorney Marcus did not seek to intervene, we address this issue in terms of the Pension Fund only.

the enforcement of the provisions of this Article shall be brought by and in the name of the Board of the Fund"). Where a misnomer occurs, "the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires." 735 ILCS 5/2-401(b) (West 2006).

The misnomer aside, the law is clear that an injunction may be binding on a nonparty. " ' "To render a person amenable to an injunction it is not necessary that they should have been a party to the suit." ' " In re A Minor, 127 Ill. 2d at 263, quoting O'Brien v. People ex rel. Kellogg Switchboard & Supply Co., 216 Ill. 354, 366, 75 N.E. 108 (1905), quoting J. High, Injunctions §1444. Because the circuit court's order maintained the status quo to the entry of the judgment of dissolution, we conclude the lack of prior notice to the Pension Fund does not render the court's injunctive order defective.

The real issue before us, as framed by the Pension Fund as intervenor, is whether the circuit court's injunctive order resulted in a "deviation from the Illinois Pension Code." Because no party questions that this raises a question of law, reviewed de novo, we proceed to the substantive merits of the claims by the Pension Fund and Mr. Winter that the order is inconsistent with the Illinois Pension Code and unsupported by case law.

**15**

No. 1-07-0619

### III.  Equity Powers of the Court

Mr. Winter and the Pension Fund contend the trial court's order violates the Pension Code.[3]  In essence, the argument is that the Pension Code bars the disbursement of benefits to anyone other than a member of the Pension Fund.  Each contends that, whatever equitable powers a circuit court has to enforce its judgment, equitable powers cannot be exercised in contravention of the Pension Code and established case law.  Each faults the order in directing the Pension Fund to issue the pension payments made "payable to Richard H. Marcus as attorney and trustee for Jerome Winter."

Ms. Winter, while making no claim that the circuit court's

---

[3] The Pension Fund and Mr. Winter also frame their challenge to the trial court's order as a violation of section 5, article 13, of the Illinois Constitution.  However, each fails to assert an argument in its respective brief distinct to the constitutional claim, which raises a possible forfeiture of the constitutional claim.  See 210 Ill. 2d R. 341(e)(7).  Nonetheless, we conclude the protection afforded by the Pension Code and the Illinois Constitution is identical in this case; for streamlining reasons, we address the issue only in terms of the Pension Code.

**16**

"payable to" language is correct, asserts there is no conflict between the injunctive order and the provisions of the Pension Code. She asserts the trial court's grant of injunctive relief was proper as the only effective remedy to address the ongoing violation of the dissolution judgment by Mr. Winter.

Based on our reading of Smithberg v. Illinois Municipal Retirement Fund, 192 Ill. 2d 291, 735 N.E.2d 560 (2000), we agree with Ms. Winter.

### A. *Co-Owners of the Public Pension*

The Public School Teachers' Retirement System of Illinois is governed by Article 17 of the Pension Code (40 ILCS 5/17-101 et seq. (West 2006)). Like other pensions controlled by the Code, Article 17 contains an "antialienation" provision. See Smithberg v. Illinois Municipal Retirement Fund, 192 Ill. 2d 291, 303, 735 N.E.2d 560 (2000) (Illinois Municipal Retirement Fund statute contains an antialienation provision "like other statutes establishing public pension funds under the Code"). Section 17-151 provides, in part:

> "All pensions, annuities, refunds, or
> death benefits granted under the provisions
> of this Article *** are exempt from
> attachment or garnishment process. They
> shall not be seized or levied upon by virtue

**17**

> of any judgment or any process or proceedings issued out of or by any court for the payment or satisfaction in whole or in part of any debt, claim, damage, demand or judgment."  40 ILCS 5/17-151 (West 2006).

The purpose behind antialienation provisions is to protect employees and their beneficiaries from creditors.  In re Marriage of Hackett, 113 Ill. 2d 286, 292, 497 N.E.2d 1152 (1986) (discussing an antialienation provision similar to section 17-151).

Where pension benefits are marital property, former spouses are not considered creditors.  750 ILCS 5/503(b)(1) (West 2006). It is well settled that the spouse of a member of a pension fund obtains an ownership interest in the benefits as marital property, which in the course of a dissolution of marriage may be allocated between spouses without regard to membership in the pension fund.  Hackett, 113 Ill. 2d at 292; In re Marriage of Carlson, 269 Ill. App. 3d 464, 646 N.E.2d 321 (1995); In re Marriage of Papeck, 95 Ill. App. 3d 624, 629, 420 N.E.2d 528 (1981).  It is the former spouse's status as a co-owner of the pension benefits that precludes the former spouse from being labeled a creditor.  The antialienation provisions of the Pension Code present no bar to the former spouse being awarded a marital

**18**

share of the pension upon dissolution of marriage, even though he or she is not a member of the pension fund involved. See, e.g., Krane, 288 Ill. App. 3d at 617-18.

In avoiding the antialienation provisions of the Pension Code, Papeck makes clear that it is the former spouse's status as a co-owner that is controlling. In Papeck, a former wife sought to recover a "loan" to her former husband that had been deposited in the husband's pension fund to reactivate his benefits. A judgment dissolving the marriage was entered. Supplemental proceedings were then initiated by the former wife to recover "the money she paid into the fund [as] her nonmarital property." Papeck, 95 Ill. App. 3d at 626. The trial court ruled in favor of the ex-wife, "directing the pension fund to pay her the money." Papeck, 95 Ill. App. 3d at 626. The appellate court reversed, based on the funds being nonmarital property and constituting a loan to the former husband. Based on this uncontested characterization of the funds, the former wife was deemed a creditor and the statutory antialienation provisions barred her recovery of the loan funds. Papeck, 95 Ill. App. 3d at 629. The Papeck court explained:

> "We caution that our holding is not to
> be construed as affecting the rights of
> nonemployee spouses to receive a proportion

**19**

of their husband's pension benefits as part of the marital property. *** The spouse of the plan participant, upon dissolution of the marriage, obtains an actual <u>co-ownership</u> interest in the benefits as marital property. Thus a divorced wife is not in the position of a mere 'creditor,' and the anti-attachment provision of the Firemen's Act does not bar her claim to a certain proportion of the benefits." (Emphasis in original.) <u>Papeck</u>, 95 Ill. App. 3d at 629.

Although <u>Papeck</u> expressly limited its holding to nonmarital property, courts have continued to struggle with the manner in which a co-owner, but a nonmember, may be paid his or her share of the pension fund benefits. The <u>Papeck</u> holding has been interpreted as barring courts from ordering public pension funds to pay benefits directly to nonmembers. See <u>In re Marriage of Johnston</u>, 206 Ill. App. 3d 262, 268, 562 N.E.2d 1004 (1990) (Rizzi, J., specially concurring) (citing <u>Papeck</u> for the proposition "provision for direct receipt of the marital property benefits cannot be accomplished by court order in a case involving a pension plan under the Pension Code"). In <u>Roehn</u>, 216 Ill. App. 3d at 894, the court cited <u>Papeck</u> and the <u>Johnston</u>

**20**

concurrence for the proposition "the established rule in Illinois [is] that a court may not order a pension plan established under the Code to pay benefits directly to a nonemployee divorced spouse." According to Roehn, courts may only order pension benefits to be paid "triangularly" from the fund to the employee spouse to the nonemployee spouse. Roehn, 216 Ill. App. 3d at 895.

The overly broad reading of Papeck was reined in by Justice McCuskey, then of the Third District, in Carlson, 269 Ill. App. 3d at 470. In Carlson, the trial court entered an order in which the pension fund agreed to pay the nonemployee spouse directly. The trial court denied the fund's attempt to vacate the order on the grounds it was prohibited by a statutory antialienation provision. In affirming, Justice McCuskey noted the Roehn court failed to recognize Papeck's "crucial distinction" between a creditor and a co-owner and "failed to include in its analysis [the antialienation provision] or its meaning as explained by [Hackett]." Carlson, 269 Ill. App. 3d at 470. The Carlson court concluded "nothing in [the antialienation provision] or prior case law precludes a pension fund established under article 4 of the Pension Code from agreeing to make direct pension benefit disbursements to a nonemployee divorced spouse." Carlson, 269 Ill. App. 3d at 471.

**21**

In Smithberg, the supreme court noted the conflict between cases like Roehn, which construed antialienation provisions to preclude courts from ordering direct payments from a "nonlitigant, public pension fund" to the nonemployee spouse, "regardless of the circumstances," and cases like Carlson, which "considered such holdings erroneous interpretations, and unwarranted extensions, of statements made in Papeck in an entirely different context." Smithberg, 192 Ill. 2d at 304-05. While the court did not "criticize or condemn" applying broadly the antialienation provisions, the supreme court did agree with Carlson's holding that "no statute or precedent prohibited a public pension fund from agreeing" to pay a nonemployee spouse directly. Smithberg, 192 Ill. 2d at 305-06. The court observed that "the results reached by the courts in those varied scenarios" reflected the uncertainty of the law at the time. Smithberg, 192 Ill. 2d at 305. Based on the supreme court's decision in Smithberg and our discussion below, we find the law on the interplay between public pension funds and the division of pension benefits as marital property under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 et seq. (West 2006)) is no longer uncertain.

### B. *The QILDRO Statute*

Effective July 1, 1999, the legislature amended certain

provisions of the Pension Code and the Illinois Marriage and Dissolution of Marriage Act to provide for QILDROs.[4]  The QILDRO statute "purports to give domestic relations courts limited powers to effect distributions of public pension benefits through QILDROs directed to nonlitigant pension funds."  (Emphasis in original.)  Smithberg, 192 Ill. 2d at 301.  Before its enactment, "no specific statutory authority in Illinois authorized a domestic relations court order directing payment of a governmental pension benefit to a person other than the regular payee."  Smithberg, 192 Ill. 2d at 301.  However, because neither party in Smithberg contended the QILDRO statute controlled, the court declined to "comment further on the wisdom or effect of this new legislation."  Smithberg, 192 Ill. 2d at 302.

To avoid "a potential violation" of section 5 of article 13 of the Illinois Constitution, the QILDRO statute requires pre-July, 1, 1999, members to consent.  C. Fain, Qualified Illinois Domestic Relations Orders: A Retirement System View, 88 Ill. B.J. 533 (2000).  Section 1-119(m)(1) of the Pension Code provides "a QILDRO issued against a member of a retirement system established under an Article of this Code that exempts the payment of

---

[4]  The QILDRO legislation underwent significant amendment in 1996, the substance of which is not relevant to this appeal.

benefits or refunds from attachment, garnishment, judgment or other legal process shall not be effective without the written consent of the member if the member began participating in the retirement system on or before the effective date of this Section [July 1, 1999]." 40 ILCS 5/1-119(m)(1) (West 2006). This is because the "contractual relationship" established under the constitution "is governed by the terms of the Code at the time the employee becomes a member of the pension system." Menken, 334 Ill. App. 3d at 534.

In Menken, decided two years after Smithberg, the Second District held a domestic relations court could not order the employee spouse to consent to the QILDRO. The court reasoned the purpose of the consent requirement was to protect the pensioner's constitutional rights, and if a trial court could order the participant to consent, the requirement "would be rendered meaningless." Menken, 334 Ill. App. 3d at 535. The Menken court also criticized the trial court for conditioning the payment of the wife's attorney fees on whether the husband consented. The court concluded that strategy amounted to "an improper attempt to coerce [the husband] and bypass section 1-119(m)(1)." Menken, 334 Ill. App. 3d at 535.

### 1. Payable to Attorney Marcus

In this case, the trial court enjoined the Pension Fund from

**24**

issuing the pension benefits to Mr. Winter and directed it to "issue all of Jerome's future pension benefit payments payable to Richard H. Marcus as attorney and trustee for Jerome Winter." While Carlson provides a pension fund may agree to alter the name of the payee, Roehn holds a court cannot do so--at least not without a QILDRO. As discussed above, Roehn's holding is likely based on an erroneous reading of Papeck. Nonetheless, because this case comes before us on an interlocutory appeal, with further proceedings intended regarding the apportionment of the pension benefits in the constructive trust, we find it unnecessary to question the "established rule" that a trial court may not order the Pension Fund to alter the named payee without a QILDRO as held by Roehn or some other type of agreement as was present in Carlson. We conclude it was unnecessary to preserve the status quo and to prevent dissipation of Ms. Winter's property for the circuit court to order the pension benefits be made payable to attorney Marcus. Consequently, we conclude more was required to change the name of the payee than is present in this case and, therefore, we vacate that portion of the trial court's order mandating the benefits be made payable to attorney Marcus, as trustee. See Menken, 334 Ill. App. 3d at 535.

## 2. Triangular Approach

At oral argument, Ms. Winter's attorney contended the trial

**25**

court's order in this case represents a subspecies of <u>Roehn</u>'s triangular approach. Given the posture of this case, however, the "triangle" as it now stands has only two sides. The proceedings intended to take place before the circuit court may well supply the missing side to this claimed variation of the triangular approach. We conclude, however, that reliance on a claimed variation of the triangular approach to provide payment of Ms. Winter's share of Mr. Winter's pension benefits is unnecessary under the facts of this case.

C. *Smithberg and Equitable Remedies*

There is no question but that our approval of the equitable relief granted in this case requires that we read <u>Smithberg</u> beyond its express holding. We conclude, however, the path we follow here is precisely the path set out by our supreme court in <u>Smithberg</u>. "Irrespective of empowering statutes, a court retains its traditional equitable powers." <u>Smithberg</u>, 192 Ill. 2d at 298.

The ultimate issue in <u>Smithberg</u> was whether the pension fund member's first or second wife was entitled to pension death benefits. The marital settlement agreement incorporated in the judgment of dissolution of marriage between the first wife and the member decedent required the first wife be named beneficiary. In fact, the member decedent named his second wife as the

**26**

beneficiary on the pension fund designation form.  The first wife argued the dissolution judgment entitled her to the benefit.  The second wife argued the statutory provision defining the beneficiary as the person designated on the form should be strictly construed "without regard to the attendant circumstances."  Smithberg, 192 Ill. 2d at 297.  While the trial court ruled in favor of the second wife, the appellate court "reversed and remanded with directions that summary judgment be entered in favor of the [first wife, pursuant to the dissolution judgment.]"  Smithberg, 192 Ill. 2d at 292.  The supreme court held the appellate court properly invoked equitable principles to enforce the marital settlement agreement, which was approved by the court and incorporated in the judgment of dissolution.  Smithberg, 192 Ill. 2d at 295.

As in Smithberg, we are confronted with "a challenge to the power of a court in this context to enforce by equitable means a judgment *** effecting [a final] distribution of marital assets."  Smithberg, 192 Ill. 2d at 295.  While there is no agreed marital settlement agreement incorporated in the judgment of dissolution entered in this case, the disbursement of marital assets set out in the judgment was approved by the circuit court and rendered final in the absence of an appeal.

In Smithberg, the supreme court observed, a court's equity

powers, founded on " 'fairness, justness and right dealing' "
(<u>Smithberg</u>, 192 Ill. 2d at 297, quoting Black's Law Dictionary
540 (6th ed. 1990)) in human intercourse, "serve as a beacon to
any court charting a course through conflicting case authorities"
(<u>Smithberg</u>, 192 Ill. 2d at 297).  The court explained:

> "It is an elementary principle of law
> that a court is vested with the inherent
> power to enforce its orders. [Citation.]
> Where a domestic relations order has been
> entered, the trial court retains jurisdiction
> to enforce its order [citation], as further
> performance by the parties is often
> contemplated [citation].  In the case of the
> court that rendered James and [his first
> wife's] judgment of dissolution, jurisdiction
> was expressly retained for the purpose of
> enforcing all of its terms and conditions.
> Had James lived, there is no doubt that he
> could have been compelled by the use of
> contempt proceedings to abide by the terms of
> his marital settlement agreement as
> incorporated in the court's judgment.  His
> death, however, does not leave the courts

> powerless to rectify his wrongdoing and
> enforce [his first wife's] right to the death
> benefit.
>
> Irrespective of empowering statutes, a
> court retains its traditional equitable
> powers. Such inherent equitable power,
> derived from the historic power of equity
> courts, cannot be taken away or abridged by
> the legislature. [Citations.] When the
> legislature encroaches upon a fundamentally
> judicial prerogative, this court has not
> hesitated to protect judicial authority."
> Smithberg, 192 Ill. 2d at 297-98.

The court also noted the particular importance of the domestic relations courts' equity powers in cases involving pensions.

> "To be sure, in many cases pension
> benefits may constitute one of the most
> important items of property acquired in a
> marriage of long duration; in some perhaps,
> it may be the only asset of any significant
> value. To deprive a domestic relations court
> of the power to apportion the value of such a

**29**

significant marital asset, and enforce that apportionment, would, in many cases, deprive the court of the ability to do justice between the parties. A court's authority to enforce its judgment, equitably apportioning marital assets, surely cannot be subordinate to the whims of one of the parties in the divorce proceeding or defeated by his or her blatant violation of the parties' agreement as incorporated in a judgment of dissolution. As we have demonstrated, courts are not powerless to enforce their judgments."

Smithberg, 192 Ill. 2d at 304.

We find dispositive here the particular importance of a domestic relations court in doing justice between the parties regarding pension benefits. As in Smithberg, the QILDRO statute plays no role because Mr. Winter's consent was required and he refused to consent. (We note, Ms. Winter did not challenge Menken's holding that a court may not compel consent under the QILDRO statute.) Nonetheless, the circuit court below was not "powerless to rectify [Mr. Winter's] wrongdoing" where Mr. Winter was receiving both his and Ms. Winter's share of the pension benefits. While the circuit court's contempt powers were clearly

**30**

ineffective against Mr. Winter because he is a permanent resident of England, much as those powers were useless to reach beyond the grave in Smithberg, the circuit court was well within its "historic power" of equity to begin to fashion a remedy to Mr. Winter's ongoing violations of his obligations under the judgment of dissolution of marriage entered in this case.

Like the appellate court's resolution affirmed by the supreme court in Smithberg, the trial court in this case properly invoked its equity powers to preserve Ms. Winter's share of the property she co-owned with Mr. Winter. To accomplish this aim, the circuit court properly enjoined the Pension Fund from giving Mr. Winter absolute control over the pension benefits, at least until the fair and just apportionment of the co-owned property could be made.

In the face of ongoing wrongdoing by Mr. Winter in retaining control over more than the share of the pension benefits to which he was entitled, the circuit court acted properly in establishing a constructive trust over the pension benefits until justice could be done between Ms. Winter and Mr. Winter. See, e.g., Suttles v. Vogel, 126 Ill. 2d 186, 193, 533 N.E.2d 901 (1988), quoting Perry v. Wyeth, 25 Ill. 2d 250, 253, 184 N.E.2d 861 (1962) (" 'A constructive trust is one raised by operation of law as distinguished from a trust created by express agreement

**31**

between the settlor and the trustee' "). While ordinarily the party in possession of the wrongfully acquired property would be declared a trustee, the circuit court correctly named attorney Marcus as trustee of the constructive trust because there was little likelihood that Mr. Winter, had he been named trustee, could have been forced "to transfer title and possession of the wrongfully acquired property to the beneficiary." Smithberg, 192 Ill. 2d at 299, citing Suttles, 126 Ill. 2d at 193. The creation of a constructive trust and the naming of attorney Marcus as trustee, were proper remedies to address Mr. Winter's "blatant violation" of the dissolution judgment that would have otherwise continued. Smithberg, 192 Ill. 2d at 304.

Because neither the QILDRO statute nor the court's contempt power provided the means of enforcing the dissolution judgment, the circuit court properly exercised its historic power of equity in fashioning a means of doing justice between the parties. "[E]quity will regard as done that which ought to be done." Smithberg, 192 Ill. 2d at 297.

### D. *Deviation From the Pension Code*

We address briefly the remaining arguments by Mr. Winter and the Pension Fund that the preliminary injunction order deviated from the Pension Code and case law.

We find no factual support for Mr. Winter's contention that

**32**

his pension benefits have been "impaired or diminished"; the total amount of his pension is unaffected. Mr. Winter's full pension payments are being sent to attorney Marcus as a trustee, who must remain in possession of the funds until further order of court. While the order certainly curtails Mr. Winter's access to his pension, it is a temporary curtailment until his wrongful receipt of Ms. Winter's share of his pension payments can be addressed in further proceedings below. If Mr. Winter wants immediate access to that portion of the pension payments that is his, he knows full well how that may be accomplished.

To be clear, in upholding the injunctive relief against the Pension Fund, we conclude the circuit court's order does not conflict with Illinois case law. Quite the opposite, we find the decisions in Smithberg and Carlson to be consistent with the circuit court's decision below. The Carlson court concluded: "[N]othing in our State's statutes or case law prohibits a pension fund established under article 4 of the Pension Code from agreeing to disburse pension benefits directly to a nonemployee divorced spouse when that spouse has become entitled to such benefits." Carlson, 269 Ill. App. 3d at 472. The implication is clear: if a pension fund may agree to disburse pension benefits directly to a nonemployee co-owner, we see nothing in our State's statutes or case law to preclude a circuit court from ordering a

**33**

Pension Fund to do that which the Pension Fund could have agreed to do on its own. No public policy was violated by the agreement in Carlson; we are unpersuaded that a deviation from the Pension Code or case law occurred here.

The circuit court below exercised its equitable power to correct an ongoing wrongdoing by Mr. Winter, much as in Smithberg. The supreme court recognized in Smithberg the fundamental judicial prerogative to do justice between the parties. Mr. Winter was not free to turn the protection afforded by section 17-151 of the Pension Code as a shield against creditors into a sword to keep Ms. Winter at bay from that portion of Mr. Winter's pension payments to which she is entitled under the judgment of dissolution of marriage. Under the attendant circumstances, section 17-151 is no barrier to entry of the circuit court's order in this case, allowing for apportionment of the pension benefits in further proceedings.

Mr. Winter and the Pension Fund argue the court's order is akin to the sort of order found improper in Menken because it seeks to coerce Mr. Winter into consenting to a QILDRO. Mr. Winter argues "no real solution is contemplated by the court's order, and that its sole raison d'etre is merely to cause Mr. Winter sufficient hardship by the withholding of his benefits that he will feel compelled to sign the consent." The Pension

**34**

Fund argues the trial court either "intends that the withholding of the benefits *** will cause [Mr. Winter] sufficient hardship that he will sign the consent, or it may be contemplating entering a future order compelling the Trustee to turn the benefits over."

The outcomes envisioned by Mr. Winter and the Pension Fund, though causing each concern, may yet be addressed in further proceedings before the circuit court. Even Mr. Winter recognizes that at some point the collected funds must be disbursed. Certainly, the marriage dissolution judgment contemplated an apportionment of the marital property pension benefits between Mr. Winter and Ms. Winter. We leave it to the circuit court to determine whether doing justice between the parties requires "a future order compelling the Trustee to turn the benefits over."

Neither Mr. Winter's nor the Pension Fund's arguments persuade us that the trial court's order was erroneous as overly coercive. In the face of continuing wrongdoing, a court's order stopping the wrongdoing will always be seen as coercive from the perspective of the wrongdoer. Here, the circuit court's order was simply a means of enforcing its dissolution judgment, where a contempt proceeding was unavailable. The supreme court recognized that compliance at times must be compelled. "Had the cause proceeded to the circuit court, [the decedent] undoubtedly

**35**

would have faced a finding of contempt of court; he would have been ordered to reinstate [his first wife] as the beneficiary of his death benefit *** ." Smithberg, 192 Ill. 2d at 296. The judicially approved triangular approach also relies on court compelled compliance. Roehn, 216 Ill. App. 3d at 895.

Nonetheless, in this case, the end result is yet to be determined. Unlike in Menken, the circuit court below did not simply order Mr. Winter to consent to a QILDRO or condition a "punishment" of sorts should he refuse. The circuit court's injunctive order preserved Ms. Winter's share of the pension payments, to which Mr. Winter does not and cannot deny she is entitled, while, for the time being, casting a net that captures Mr. Winter's share until accounts can be settled. The court's order was a proper exercise of its broad equity powers. "Given these facts and circumstances, the only matter remaining to be resolved concerns the mechanics of that resolution." (Emphasis omitted.) Smithberg, 192 Ill. 2d at 306.

## CONCLUSION

For the reasons set forth above, we hold the trial court properly invoked its equity powers to grant injunctive relief. We uphold the court's order enjoining the Pension Fund from issuing further payments to Mr. Winter directly, enjoining Mr. Winter's receipt of pension payments, and ordering the Pension

**36**

No. 1-07-0619

Fund to send Mr. Winter's payments in care of attorney Marcus as trustee. However, we vacate that portion of the order that requires the Pension Fund to issue Mr. Winter's payments "payable to" attorney Marcus. The funds received under this improper payee designated method are to remain in the constructive trust to be apportioned, along with future pension benefits, in accordance with the results of further proceedings to take place below. We remand to the circuit court for further proceedings consistent with this opinion.

Affirmed in part and vacated in part; cause remanded.

R. GORDON, P.J., and WOLFSON, J., concur.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

IN RE MARRIAGE OF:

ANA WINTER,
      Petitioner-Appellee,

and

JEROME WINTER,
      Respondent-Appellant,

(PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, Intervenor).

## No. 1-07-0619

Appellate Court of Illinois
First District, First Division

Filed: November 24, 2008

**JUSTICE GARCIA delivered the opinion of the court.**

**R. GORDON, P.J., and WOLFSON, J., concur.**

Appeal from the Circuit Court of Cook County
Honorable Mark Lopez, Judge Presiding

| | |
|---|---|
| For PETITIONER - APPELLEE | James K. Leven<br>203 North LaSalle Street, Suite 2100<br>Chicago, Illinois 60601 |
| For RESPONDENT - APPELLANT | Richard H. Marcus<br>Law Offices of Chicago Kent College of Law<br>565 West Adams Street |

**Chicago, IL 60661**

**Of Counsel:**
**Stuart Berks,**
**Leon E. Farbman**
**Deutsch, Levy & Engel, Chartered**
**225 West Washington Street, Suite 1700**
**Chicago, IL 60606**

**INTERVENOR**    **Anita Tanay**
**Jacobs, Burns, Orlove, Stanton & Hernandez**
**122 South Michigan Avenue, Suite 1720**
**Chicago, IL 60603**