*In re* MARRIAGE OF JANET A. CARLSON, Petitioner-Appellee, and JOHN C. CARLSON, Respondent (The City of Galesburg Firefighters' Pension Fund, Defendant-Appellant; The City of Galesburg, as Employer, *et al.*, Defendants).

Third District    No. 3—94—0465

Opinion filed February 7, 1995.

Thomas F. McGuire & Associates, Ltd., of Long Grove (Brian A. Schroeder, of counsel), for appellant.

Winstein, Kavensky & Wallace, of Rock Island (Brett A. Nelson, of counsel), for appellee.

Richard J. Reimer, of Sklodowski, Franklin, Puchalski & Reimer, of Chicago, for *amici curiae.*

JUSTICE McCUSKEY delivered the opinion of the court:

The marriage of John Carlson (John) and Janet Carlson (Janet) was dissolved in the circuit court of Henry County. Thereafter, Janet became entitled to a share of the pension benefits (the pension) which John would receive as a result of his service to the City of Galesburg fire department. The City of Galesburg Firefighters' Pension Fund (the Fund) agreed to send Janet's share of the pension directly to her. The trial court incorporated this agreement into an order.

About three years later, the Fund filed a motion asking the court to vacate the agreed order. The Fund claimed that no statute or judicial opinion provided any authority for the payment of pension benefits directly to a nonemployee divorced spouse. The trial court denied the Fund's motion. The Fund appeals.

Following our careful review of the record and applicable law, we conclude that the trial court was correct when it denied the Fund's motion. We have found no statute or case law which prohibits a pension fund established under article 4 of the Pension Code (Ill. Rev. Stat. 1991, ch. 108$^1$/₂, par. 1—101 *et seq.*) from agreeing to disburse pension benefits directly to nonemployee divorced spouses. Furthermore, the Fund agreed to the arrangement about which it now complains, despite the fact that the Fund was a party to the proceeding and was represented by counsel. As a result, we find that the agreed order was valid. Consequently, based on the facts of this case, we affirm.

## FACTS

John and Janet were married in 1968. John is a firefighter for the City of Galesburg fire department. He makes regular payments into the Fund, which provides for his pension benefits. On December 1, 1988, the trial court entered an order dissolving the parties' marriage. Included in the order was a provision awarding Janet a share of John's pension. The court ordered John to execute all documents necessary to secure Janet's right to a portion of his pension. John was also ordered to begin paying to Janet her share of his pension on his sixtieth birthday, whether or not he had retired at that time.

John failed to sign any of the necessary documents. On November 2, 1989, Janet filed a petition seeking leave to add the Fund as a party defendant. Her petition was subsequently granted. Additionally, Janet filed a second petition asking the court to compel John to execute the documents. Janet also asked for an order directing the Fund to pay her share of the pension directly to her.

On May 1, 1991, Janet and the Fund consented to the entry of an order (the agreed order) in which Janet agreed to defer receipt of the pension until John's retirement. In return, the Fund agreed to mail Janet's share of the pension directly to her. The agreed order contains other directives, none of which are relevant to this appeal.

Some time later, the Illinois Department of Insurance (Department) conducted an audit of the Fund's assets and liabilities. When the Department discovered the agreed order, it informed the Fund of its opinion that the agreed order was invalid. Shortly thereafter, on April 8, 1994, the Fund filed a motion asking the trial court to vacate the portion of the agreed order directing the Fund to pay the pension to Janet. The Fund argued that the agreed order violated Illinois law and public policy. The Fund contended there was no legal basis for the entry of the agreed order. The trial court denied the Fund's motion on June 2, 1994. This timely appeal followed. The Illinois Police Pension Fund Association and the Illinois Professional Firefighters' Association (amici) have filed an amicus curiae brief.

The Fund and amici argue that the trial court committed error when it denied the Fund's motion to vacate the agreed order. First, amici argue that applicable Federal law prohibits the apportionment of pension benefits to nonemployee divorced spouses without the entry of a qualified domestic relations order. Second, the Fund contends that neither the Illinois Pension Code (Ill. Rev. Stat. 1991, ch. 108½, par. 1—101 et seq.) (the Pension Code) nor applicable case law permits nonemployee divorced spouses to collect benefits directly from civil service pension funds. Finally, based on its interpretation of the Pension Code and case law, the Fund contends the agreed order was void ab initio. We shall consider each argument in turn.

## FEDERAL STATUTORY BASIS

The first issue on appeal is whether a Federal statutory basis exists for the entry of a qualified domestic relations order (QDRO). Amici argue that the Fund does not qualify for treatment under applicable Federal law. For the reasons which follow, we agree.

■ A QDRO is a creature of the Employee Retirement Income Security Act (ERISA) (29 U.S.C.A. § 1001 et seq. (West 1985)). ERISA prohibits the apportionment of pension benefits from qualified pen-

sion plans. (29 U.S.C.A. § 1056(d)(1) (West 1985).) However, a court may order a pension fund to make direct payments to a former spouse of a pensioned employee if the court enters a QDRO. (29 U.S.C.A. § 1056(d)(3)(A) (West 1985).) A court order must meet very specific requirements in order to qualify as a QDRO. See 29 U.S.C.A. §§ 1056(d)(3)(B), (d)(3)(C), (d)(3)(D), (d)(3)(F) (West 1985).

Nevertheless, ERISA does *not* apply to an employee benefit plan if it is a governmental plan. (29 U.S.C.A. § 1003(b)(1) (West 1985).) A governmental plan is "a plan established or maintained for its employees *** by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C.A. § 1002(32) (West 1985).

▮ Here, we take judicial notice of the existence of the City of Galesburg (City). (See Ill. Rev. Stat. 1991, ch. 24, par. 2—1—1.) Municipal governments are creatures of the Illinois Constitution. (Ill. Const. 1970, art. VII, §§ 6, 7; *American Telephone & Telegraph Co. v. Village of Arlington Heights* (1993), 156 Ill. 2d 399, 414, 620 N.E.2d 1040, 1047.) The City has established the Fund for its firefighters under article 4 of the Pension Code. (Ill. Rev. Stat. 1991, ch. 108¹/₂, par. 4—101 *et seq.*) The foregoing laws and constitutional provisions of the State of Illinois furnish the basis for the Fund's existence and creation. The Fund was established for the benefit of the City's firefighters. For the reasons given, we conclude that the Fund is a "governmental plan" under section 1003(b)(1). Accordingly, we find the agreed order was not a QDRO because ERISA does not apply to the Fund. For the reasons given, we determine there is no Federal statutory basis for the apportionment of the pension in the instant case. Accord *In re Marriage of Roehn* (1991), 216 Ill. App. 3d 891, 894, 576 N.E.2d 560, 562.

## THE PENSION CODE AND APPLICABLE CASE LAW

The Fund next urges that section 4—135 of the Pension Code (Ill. Rev. Stat. 1991, ch. 108¹/₂, par. 4—135) invalidates the agreed order. Section 4—135 exempts the money in firefighters' pension funds from being used to satisfy judgments, claims or debts. Also, the Fund relies primarily on two decisions of the appellate court which indicate that a pension's assets may not be paid directly to a nonemployee divorced spouse. The Fund contends that these two cases control the result in this case. For reasons that follow, we do not agree with the Fund's arguments.

▮ We shall examine in detail the statute and the relevant case law before applying the law to the facts of the case at hand. Article 4 of the Pension Code applies to municipalities with populations of less

than 500,000 persons. (Ill. Rev. Stat. 1991, ch. 108$^1$/$_2$, par. 4—103.) Section 4—135, the portion of the Pension Code at issue here, provides in full:

"No portion of the pension fund shall, either before or after a board's order of distribution to any retired firefighter or his or her beneficiaries, be held, seized, taken subject to, or detained or levied on by virtue of any process, injunction interlocutory or other order or judgment, or any process or proceeding whatever issued by any court of this State, for the payment or satisfaction in whole or in part of any debt, damages, claim, demand or judgment against any firefighter or his or her beneficiaries, but the fund shall be held, secured and distributed for the purposes of pensioning such firefighter and beneficiaries and for no other purposes whatever." (Ill. Rev. Stat. 1991, ch. 108$^1$/$_2$, par. 4—135.)

Our research has yielded few cases explaining the meaning and effect of section 4—135. Prior to 1986, our supreme court's only decisions regarding section 4—135 relied on the provision to exempt firefighters' pension benefits from garnishment, attachment and similar procedures. See *Friedman & Rochester, Ltd. v. Walsh* (1977), 67 Ill. 2d 413, 418, 367 N.E.2d 1325, 1327; *First Finance Co. v. Pellum* (1975), 62 Ill. 2d 86, 90, 338 N.E.2d 876, 878; *Henderson v. Foster* (1974), 59 Ill. 2d 343, 347, 319 N.E.2d 789, 791-92.

In 1986, our supreme court first considered section 4—135 in the context of a dissolution of marriage. In *In re Marriage of Hackett* (1986), 113 Ill. 2d 286, 497 N.E.2d 1152, the supreme court determined that a firefighter's pension benefits under article 4 of the Pension Code may be divisible as marital property in dissolution actions. The court held that section 4—135 did not supersede the provisions of section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 503), which provides for the division and distribution of marital property. *Hackett*, 113 Ill. 2d at 292-93, 497 N.E.2d at 1155.

However, the court also noted that upon dissolution of a marriage, a former spouse becomes a co-owner of pension benefits accumulated during the marriage. (*Hackett*, 113 Ill. 2d at 293, 497 N.E.2d at 1155.) Finally, and most importantly, the court held that the legislative intent and purpose of section 4—135 was to shield retired firefighters and their beneficiaries from creditors. *Hackett*, 113 Ill. 2d at 292-93, 497 N.E.2d at 1155.

Five years before *Hackett* was decided, the First District Appellate Court decided *In re Marriage of Papeck* (1981), 95 Ill. App. 3d 624, 420 N.E.2d 528. The *Papeck* case concerned article 6 of the Pension Code, which establishes an annuity fund for firefighters in cities

of over 500,000 persons. (Ill. Rev. Stat. 1991, ch. 108$^{1}$/$_{2}$, par. 6—101 *et seq.*) Article 6 contains a provision exempting such annuity funds from garnishment or attachment by creditors. (Ill. Rev. Stat. 1991, ch. 108$^{1}$/$_{2}$, par. 6—213.) This provision parallels section 4—135.

In *Papeck*, the husband and wife were married for nine months. The husband was a firefighter for the Chicago fire department. During the marriage, the wife paid over $17,000 into the annuity fund in order to restore her husband's eligibility for benefits. After the parties' marriage was dissolved, the wife asked the trial court to order the annuity fund to remit to her the $17,000 she had paid into the annuity fund. In support of her contention, she claimed the money was her nonmarital property. The trial court ordered the annuity fund to return the money to the wife.

On appeal, the First District Appellate Court in *Papeck* held that a trial court lacked the statutory authority to order a fund established under article 6 of the Pension Code to repay to a nonemployee divorced spouse money she paid into the annuity fund. In doing so, the *Papeck* court relied on section 6—213, which prohibited creditors from reaching the money in annuity funds. The court said the wife could not recover from the annuity fund because her claim was essentially that of a creditor. The money was properly characterized as the wife's nonmarital property. She claimed entitlement to a portion of the annuity fund only because she paid money into the fund for her former husband's benefit. The court also said the wife was entitled to recover the money directly from her husband. *Papeck*, 95 Ill. App. 3d at 627-29, 420 N.E.2d at 530-31.

However, the *Papeck* court carefully limited its holding. The court expressly noted that its decision in no way affected the right of a nonemployee divorced spouse to a portion of the pension benefits as marital property. This concept is grounded in the judicial recognition of a co-ownership interest in a former spouse's pension benefits as marital property. (*Papeck*, 95 Ill. App. 3d at 629-30, 420 N.E.2d at 531-32.) Therefore, the court said that a nonemployee divorced spouse is *not* a mere creditor when she seeks her share of her former spouse's pension benefits. For this reason, section 6—213 does not bar a former spouse's claim to a share of pension benefits which have accumulated in the annuity fund. *Papeck*, 95 Ill. App. 3d at 629, 420 N.E.2d at 532.

Ten years after *Papeck*, and five years after *Hackett*, the Second District Appellate Court decided *In re Marriage of Roehn* (1991), 216 Ill. App. 3d 891, 576 N.E.2d 560, which involved article 4 of the Pension Code. In *Roehn*, the wife sought to secure direct payment of her share of her former husband's firefighter pension benefits. Pursuant

to section 1056 of ERISA, the trial court entered a QDRO in order to permit this result. On appeal, the court held that the pension fund was a governmental plan and therefore exempt from ERISA's purview. *Roehn*, 216 Ill. App. 3d at 894, 576 N.E.2d at 562.

The *Roehn* court relied on *Papeck* for the proposition that proceeds from a pension fund established under the Pension Code are never directly payable to a nonemployee divorced spouse under any circumstances. (*Roehn*, 216 Ill. App. 3d at 894, 576 N.E.2d at 562.) The *Roehn* court did note that pension benefits are marital property and that a former spouse obtains a co-ownership interest in them. However, the court concluded that pension benefits may not be paid directly from a pension fund to the nonemployee divorced spouse. The *Roehn* court held that payments must go from the pension fund, through the pensioned employee, and then to the former spouse. The court did not mention section 4—135 in its analysis. *Roehn*, 216 Ill. App. 3d at 894-95, 576 N.E.2d at 562-63.

The court's holding in *Roehn* would appear to prohibit a firefighters' pension fund from disbursing pension benefits directly to a nonemployee divorced spouse. However, our careful review of the preceding cases leads us to conclude that the *Roehn* court incorrectly relied on *Papeck* for its reasoning. The court in *Papeck* held only that former spouses who are *creditors* may not directly reach pension fund assets. The wife in *Papeck* sought to recover her own nonmarital property from the annuity fund. She did *not* claim entitlement to pension benefits. (*Papeck*, 95 Ill. App. 3d at 624, 420 N.E.2d at 529.) However, in *Roehn*, the wife sought to compel the pension fund to pay her share of pension benefits directly to her. (*Roehn*, 216 Ill. App. 3d at 892, 576 N.E.2d at 561.) Rather than being a mere creditor, a former spouse who has become entitled to pension benefits by virtue of marriage to a pensioned firefighter is elevated to co-owner status in such benefits. (*Hackett*, 113 Ill. 2d at 292, 497 N.E.2d at 1154; *Papeck*, 95 Ill. App. 3d at 629, 420 N.E.2d at 532.) The Second District Appellate Court in *Roehn* did not draw this crucial distinction between the facts in *Papeck* and the facts in *Roehn*.

Furthermore, the *Roehn* court failed to include in its analysis section 4—135 or its meaning as explained by prior case law. In *Hackett*, our supreme court held that the purpose and legislative intent behind section 4—135 of the Pension Code was to protect retired firefighters and their beneficiaries from *creditors*. (*Hackett*, 113 Ill. 2d at 292, 497 N.E.2d at 1155.) We are bound by the supreme court's interpretation of section 4—135. The court in *Hackett* did not find a legislative intent to prohibit pension funds from agreeing to make payments directly to nonemployee divorced spouses who are entitled to receive those benefits.

■ For the reasons expressed above, we conclude that nothing in section 4—135 or prior case law precludes a pension fund established under article 4 of the Pension Code from agreeing to make direct pension benefit disbursements to a nonemployee divorced spouse. Furthermore, we have found nothing in our State's statutes or case law which supports the *Roehn* court's assertion that a pension fund established under article 4 of the Pension Code may *never* pay pension benefits directly to a nonemployee divorced spouse who is entitled to such benefits. (See Ill. Rev. Stat. 1991, ch. 108$^{1}$/$_{2}$, par. 4—135; *Hackett*, 113 Ill. 2d at 292-93, 497 N.E.2d at 1155; *Papeck*, 95 Ill. App. 3d at 629, 420 N.E.2d at 531-32.) Our interpretation of the appellate court's decision in *Papeck*, coupled with our supreme court's interpretation of section 4—135 in *Hackett*, leads us to this conclusion.

Finally, we shall apply the principles expressed above to the facts of the case at hand. Janet is John's former wife. Under the trial court's order of December 1, 1988, she is entitled to a share of his pension benefits. As a consequence, Janet is a co-owner of the pension. She is *not* John's creditor because she only seeks to recover pension benefits. (See *Papeck*, 95 Ill. App. 3d at 628-29, 420 N.E.2d at 531.) The Fund *agreed* to pay Janet's share of the pension directly to her and consented to the entry of an order in the trial court. As we have explained at length, nothing in the Pension Code or applicable case law prohibited the entry of the agreed order. For the reasons indicated, we conclude that the agreed order is valid.

Moreover, we find further support for our ultimate decision because the Fund asks us to set aside an order to which it agreed more than three years ago. The Fund agreed on May 1, 1991, to a court order requiring the direct payment to Janet of her share of John's pension. Prior to the entry of the agreed order, the Fund was made a party defendant. The Fund was represented by counsel and had an ample opportunity to ascertain the applicable law.

For the reasons indicated, we conclude that the trial court had the authority to enter the agreed order. Based on the record and applicable law, we find that the trial court properly denied the Fund's motion to vacate the agreed order. To the extent that our decision is inconsistent with the Second District Appellate Court's decision in *Roehn*, we decline to follow its reasoning.

## CONCLUSION

We agree with *amici* that no Federal statutory basis exists for the entry of a qualified domestic relations order requiring the Fund to pay pension benefits directly to a nonemployee divorced spouse.

However, nothing in our State's statutes or case law prohibits a pension fund established under article 4 of the Pension Code from agreeing to disburse pension benefits directly to a nonemployee divorced spouse when that spouse has become entitled to such benefits. Accordingly, we hold that the agreed order was valid in this case. Moreover, the Fund made an informed decision and consented to make direct payments to Janet. The Fund was a party to the proceedings, represented by counsel, and voluntarily agreed to the order which it now attacks on appeal. As a result of our holding, we find that the trial court correctly refused to vacate the agreed order.

Our decision renders it unnecessary to consider the other contentions raised by the parties in this appeal. The judgment of the circuit court of Henry County is affirmed.

Affirmed.

BRESLIN and HOLDRIDGE, JJ., concur.