MARIE RAFFERTY-PLUNKETT, Petitioner-Appellant, v. PATRICK K. PLUNKETT, Defendant (State Universities Retirement System of Illinois, Respondent-Appellee).

Third District    No. 3—08—0659

Opinion filed June 11, 2009.

Pamela Davis Gorcowski (argued) and Richard J. Kavanagh, both of Kavanagh Grumley & Gorbold LLC, and Steven Troy (argued), of Mason, Orloff, Reich, Troy & Thanas, both of Joliet, for appellant.

Lauren Frank Noll (argued) and Ranjit Hakim, both of Mayer Brown LLP, of Chicago, for appellee.

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

The trial court granted respondent State Universities Retirement System's motion to dismiss petitioner Marie Rafferty-Plunkett's citation to discover assets and denied her motion for turnover of pension fund assets that were awarded to Marie in the dissolution of her marriage to Patrick. The trial court found that in the absence of a qualified Illinois domestic relations order (QILDRO) consent executed by Patrick, the trial court had no statutory authority to order the State Universities Retirement System to turn over pension benefits. Marie appeals the trial court's ruling. We reverse the trial court and remand.

## FACTS

On September 15, 1998, the trial court entered a judgment order dissolving the marriage of Marie Rafferty-Plunkett and Patrick Plunkett. As part of the dissolution order, the trial court approved as fair, just and equitable an oral settlement agreement, noting the parties had entered into the agreement "freely, voluntarily without force, coercion or duress," with full knowledge and full and complete disclosure. As part of the settlement agreement incorporated into the dissolution judgment, Marie was awarded 50% of Patrick's pension plan benefits acquired during the marriage. The judgment provided, in part:

> "As the Defendant is currently receiving his pension, it is the agreement of the parties that the Defendant shall pay Plaintiff one-half (1/2) of said pension amounts directly to Plaintiff commencing October 1, 1998[,] and continuing thereafter until such time as a Qualified Domestic Relations Order[1] becomes effective for the benefit of Plaintiff."

On September 15, 2006, the trial court entered a rule to show cause against Patrick, in part, for his failure to pay pension benefits to Marie. On October 23, 2006, following a hearing in which Patrick did not appear, the trial court entered an order finding, in part, that

---

[1]The dissolution order incorrectly called for a qualified domestic relations order (QDRO). A QDRO is a creature of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 et seq. (2006)), and although it is also a method for dividing pension benefits between the employee spouse and the nonemployee spouse pursuant to a dissolution of marriage, ERISA does not apply to an employee benefit plan if it is a government plan. In re Marriage of Carlson, 269 Ill. App. 3d 464, 466-67, 646 N.E.2d 321, 323 (1995). Prior to July 1, 1999, there was no statutory basis following the dissolution of a marriage for the apportionment of a government pension plan, a void addressed by the QILDRO legislation. C. Fain, Qualified Illinois Domestic Relations Orders: A Retirement System View, 88 Ill. B.J. 533 (2000).

Patrick was in indirect civil contempt for his failure to pay one-half of his monthly pension benefit to Marie. The trial court found Patrick owed Marie an arrearage equal to $106,523, which the trial court reduced by $38,149, the amount Marie owed Patrick from her pension. As a result, the trial court entered a judgment in favor of Marie in the amount of $68,374. As part of the judgment order, the trial court directed Patrick to execute a consent to the issuance of a QILDRO and found that Patrick's current monthly pension benefit is $6,671, of which Marie is entitled to $3,335 per month.

Marie issued citations to discover assets to various banks and brokerage firms and secured the turnover of $14,630 toward satisfaction of the judgment order. Marie also issued a citation to discover assets to the State Universities Retirement System of Illinois (SURS) and directed to the same agency a motion for a turnover order. SURS filed a motion to dismiss the citation to discover assets. Patrick did not appear at the citation proceeding. The evidence indicates that in correspondence to SURS dated January 8, 2007, Patrick verified his address in Dublin, Ireland. He requested his annuity checks be sent to his Ireland address. Withholding certificates signed by Patrick in June 2007 and November 2007 also reflect the Ireland address.

On April 24, 2008, the trial court granted SURS's motion to dismiss the citation to discover assets and denied Marie's motion for a turnover order. The trial court specifically found that because Patrick had not executed a consent to a QILDRO, the trial court was without statutory authority to "otherwise override the exemption of pension funds from judgement as set out in the Illinois Pension Code [and] the Illinois Code of Civil Procedure." Following the trial court's denial of Marie's motion to reconsider, Marie filed this appeal.

## ANALYSIS

Marie raises several issues on appeal, including whether section 1—119(m) of the Illinois Pension Code (the Pension Code) (40 ILCS 5/1—119(m) (West 2006)) violates the Illinois Constitution. Because we have concluded our decision rests on an alternate ground, we do not reach Marie's constitutional challenges to section 1—119(m) of the Pension Code. See *In re E.H.*, 224 Ill. 2d 172, 178, 863 N.E.2d 231, 234 (2006) (stating that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort). Furthermore, because we are ruling in Marie's favor, we find it unnecessary to address her first issue on appeal, that the trial court erred in allowing SURS, as opposed to Patrick, to raise an objection to the citation to discover assets on the basis the assets were exempt from judgment. We find the issue before us is whether the

trial court erred in concluding it had no authority to enforce a judgment order directing Marie's share of pension funds be delivered to her where there exists an agreed settlement order incorporated in the judgment for dissolution of marriage that addressed, in part, the distribution of the pension funds. We conclude the trial court did so err.

Section 1—119 of the Pension Code, effective July 1, 1999, entitled "Qualified Illinois Domestic Relations Orders," gave Illinois domestic relations courts the statutory authority to direct payment of governmental pension benefits to a person other than the regular payee. *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 301, 735 N.E.2d 560, 566-67 (2000); 40 ILCS 5/1—119 (West 2006). Even before the statutory authority conveyed by the QILDRO legislation, however, this court considered trial courts had the authority to direct pension benefits to a payee other than the pension member. *In re Marriage of Carlson*, 269 Ill. App. 3d 464, 471-72, 646 N.E.2d 321, 326-27 (1995). The court in *Carlson* found that notwithstanding the section of the Pension Code governing firefighters' pension funds that dictated the pension funds could not be used to satisfy judgments, claims, or debts, the trial court had the authority to enter an agreed order establishing pension benefits be disbursed directly to the nonemployee divorced spouse. *Carlson*, 269 Ill. App. 3d at 471, 646 N.E.2d at 326. In *Carlson*, the member spouse had failed to sign any of the documents necessary to secure the nonmember divorced spouse's right to a portion of the member's pension as awarded in the marriage dissolution order. *Carlson*, 269 Ill. App. 3d at 465-66, 646 N.E.2d at 322. Following the nonmember's petition to the trial court, the fund consented to the entry of an agreed order in which the fund, in return for the nonmember's agreement to defer receipt of the pension until the member's retirement, agreed to mail the nonmember's share directly to her. *Carlson*, 269 Ill. App. 3d at 466, 646 N.E.2d 323. When the Fund later petitioned the court to vacate the agreed order, we affirmed the trial court's decision and upheld the validity of the agreed order. *Carlson*, 269 Ill. App. 3d at 471-72, 646 N.E.2d at 326-27.

In coming to our determination in *Carlson*, this court was guided by the supreme court's decision in *In re Marriage of Hackett*, 113 Ill. 2d 286, 497 N.E.2d 1152 (1986). In *Hackett,* the supreme court determined that a firefighter's pension benefits may be divisible as marital property in dissolution actions and that the pertinent section of the Pension Code did not supercede the provisions of section 503 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act). *Hackett*, 113 Ill. 2d at 292-93, 497 N.E.2d at 1154-55; 750 ILCS

5/501 *et seq.* (West 2006). Important to the *Hackett* decision, as noted by the *Carlson* court, was its holding that the legislative intent of the pertinent section of the Pension Code was to shield retired firefighters and their beneficiaries from creditors. *Carlson*, 269 Ill. App. 3d at 468, 646 N.E.2d at 324. It therefore stands to reason that the court in *Hackett* agreed that upon dissolution of a marriage, a former spouse becomes a co-owner of pension benefits accumulated during the marriage. *Hackett*, 113 Ill. 2d at 292, 497 N.E.2d at 1154. It is now well settled that retirement benefits are presumed to be marital property to the extent that the beneficial interest was acquired during the marriage, a concept acknowledged in the 1999 amendment to section 503(b)(2) of the Marriage Act. *Smithberg*, 192 Ill. 2d at 303, 735 N.E.2d at 567; 750 ILCS 5/503(b)(2) (West 2006). Pension benefits in many cases constitute one of the most important items of property acquired in a marriage of long duration. *Smithberg*, 192 Ill. 2d at 304, 735 N.E.2d at 568.

In *Smithberg*, a post-QILDRO case, the supreme court acknowledged the change to the law brought about by the QILDRO provisions, refusing to further comment on "the wisdom or effect" of the legislation as not dispositive of the case before it. *Smithberg*, 192 Ill. 2d at 302, 735 N.E.2d at 567 (noting in passing that the QILDRO provision did not apply to the payment of death benefits). In *Smithberg*, the ultimate issue was whether the pension fund member's first or second wife was entitled to pension death benefits. *Smithberg*, 192 Ill. 2d at 294-95, 735 N.E.2d at 563. Contrary to the marital settlement agreement, the member named his second wife as the beneficiary on the pension fund death benefit designation form. *Smithberg*, 192 Ill. 2d at 292-93, 735 N.E.2d at 562. The first wife argued the marital settlement agreement entitled her to the benefit while the second wife argued the statutory provision defining the beneficiary as the person designated on the form should be strictly construed. *Smithberg*, 192 Ill. 2d at 296-97, 735 N.E.2d at 564.

The *Smithberg* court engaged in a lengthy discussion regarding the court's power to provide equitable relief, stating that "[i]rrespective of empowering statutes, a court retains its traditional equitable powers." *Smithberg*, 192 Ill. 2d at 298, 735 N.E.2d at 565. The *Smithberg* court also stated the court's powers cannot be taken away or abridged by the legislature. *Smithberg*, 192 Ill. 2d at 298, 735 N.E.2d at 565 The *Smithberg* court also reinforced the *Hackett* court's finding that antialienation provisions do not conflict with the Marriage Act and ultimately agreed, given the facts and circumstances before it, with the *Carlson* court's reasoning that no statute or precedent prohibited a public pension fund from agreeing to make payment to a

nonemployee divorced spouse entitled to pension benefits. *Smithberg*, 192 Ill. 2d at 304-06, 735 N.E.2d at 568-69. The *Smithberg* court affirmed the order of the appellate court granting summary judgment to the first wife. *Smithberg*, 192 Ill. 2d at 306, 735 N.E.2d at 569. Although the *Smithberg* court limited its decision to the ultimate issue of who was entitled to the deceased's death benefit, the court also noted that "the facts and arguments raise a broader, more troubling matter, specifically, a challenge to the power of a court in this context to enforce by equitable means a judgment based upon the incorporated terms of a marital settlement agreement effecting an agreed distribution of marital assets." *Smithberg*, 192 Ill. 2d at 295, 735 N.E.2d at 563.

■ In the case before us, the trial court believed section 1—119(m)(1) of the Pension Code preempted the trial court's authority to order the turnover of assets from SURS to Marie. We disagree. Section 1—119(m)(1) of the Pension Code applies if the pension member began participating in the retirement system on or before the July 1, 1999, effective date of the QILDRO legislation. Section 1—119(m)(1) of the Pension Code reads:

> "[A] QILDRO issued against a member of a retirement system established under an Article of this Code that exempts the payment of benefits or refunds from attachment, garnishment, judgment or other legal process shall not be effective without the written consent of the member ***. That consent must specify the retirement system, the court case number, and the names and social security numbers of the member and the alternate payee. The consent must accompany the QILDRO when it is filed with the retirement system, and must be in substantially the following form [sample provided]." 40 ILCS 5/1—119(m)(1) (West 2006).

The consent provision of section 1—119(m)(1) of the Pension Code, which is applicable in the instant case, was apparently included in the legislation to protect a pensioner's rights under article XIII, section 5, of the Illinois Constitution, which provides that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, §5; *In re Marriage of Menken*, 334 Ill. App. 3d 531, 534, 778 N.E.2d 281, 284 (2002).[2] As noted in our discussion above, such anti-alienation provi-

---

[2] In *Menken*, the court concluded that because section 1—119(m)(1) of the Pension Code was motivated by an intent to protect a pensioner's constitutional rights, the trial court was without authority to order respondent to

sions are intended to protect the beneficiaries of pensioners as well as the pensioner.

■ In the instant case, we find no conflict between section 1—119(m)(1) of the Pension Code and a finding that Patrick did consent to an order directing payments to Marie when he freely and voluntarily entered into the settlement agreement that was incorporated in the judgment for dissolution of the marriage. A property settlement between spouses, which has been approved by the court and incorporated in the judgment of dissolution, becomes merged in the judgment and the rights of the parties thereafter rest on the judgment. *In re Marriage of Hoffman*, 264 Ill. App. 3d 471, 474, 637 N.E.2d 628, 630 (1994); *Olson v. Olson*, 58 Ill. App. 3d 276, 278-79, 374 N.E.2d 247, 249 (1978) (the purpose of a settlement agreement is to establish the rights and duties of the parties to the agreement). As stated in *Guyton v. Guyton*, 17 Ill. 2d 439, 444-45, 161 N.E.2d 832, 835 (1959), "when such agreements are made a part of the [dissolution] decree the parties are concluded thereby." In *Guyton*, the court affirmed the trial court's rejection of defendant's attempt to set aside his agreement to convey real property to the plaintiff, which was made a part of the dissolution decree. *Guyton*, 17 Ill. 2d at 444-45, 161 N.E.2d at 834-35. The law in Illinois is designed to promote the amicable settlement of disputes between parties to a marriage dissolution, and unless the agreement is deemed unconscionable, the agreements are binding upon the courts. *In re Marriage of Kloster*, 127 Ill. App. 3d 583, 585-87, 469 N.E.2d 381, 383-85 (1984).

Furthermore, "[p]rovisions of divorce judgments and property settlements are construed by applying the same rules as those governing construction of contracts." *In re Marriage of Sherrick*, 214 Ill. App. 3d 92, 96, 573 N.E.2d 335, 338 (1991). Clear and unambiguous contractual terms are to be given their ordinary and natural meaning. *Sherrick*, 214 Ill. App. 3d at 96, 573 N.E.2d at 338. The contract may be composed of several writings whose terms do not conflict. *Kloster*, 127 Ill. App. 3d at 584-85, 469 N.E.2d at 383. The intent of the parties is determined with reference to the contract as a whole, viewing each part in light of the others. *Sherrick*, 214 Ill. App. 3d at 96, 573 N.E.2d at 338; see *In re Marriage of Marr*, 264 Ill. App. 3d 932, 935, 638

execute a QILDRO consent form. *Menken*, 334 Ill. App. 3d at 534, 778 N.E.2d at 284. However, the factual situation in *Menken* differs from the instant case; in *Menken*, there is no indication that the respondent entered into a voluntary settlement agreement in which he agreed the petitioner would receive a statutory portion of his pension. *Menken*, 334 Ill. App. 3d at 532-33, 778 N.E.2d at 282.

N.E.2d 303, 306 (1994) (finding petitioner estopped from denying the existence of an oral marital settlement agreement in which he agreed to quitclaim his interest in property to respondent where agreement was accepted by the trial court and written into the record).

In the instant case, as part of the dissolution order, the trial court approved as fair, just and equitable an oral settlement agreement between Patrick and Marie, noting the parties had entered into the agreement "freely, voluntarily without force, coercion or duress," with full knowledge and full and complete disclosure. Patrick signed the dissolution agreement, which was a recitation of the settlement agreement, in which he consented to an award to Marie of 50% of his pension plan benefits acquired during the marriage. The trial court further found the parties had agreed that Patrick would pay Marie one-half of said pension amounts directly, commencing October 1, 1998, and continuing thereafter until such time as a "Qualified Domestic Relations Order [sic]" became effective for the benefit of Marie. The judgment for dissolution order contained nearly all the provisions required by the Pension Code and, as such, meets the requirement of the written consent called for in the Pension Code. Patrick's consent should be considered binding, as would any other provision of the contracted settlement agreement. Patrick's consent, through the agreed settlement, can be read together with the QILDRO forms provided by SURS to give effect to the intention of the parties in reaching the settlement and to fulfill the substantial compliance directive of section 1—119(m)(1) of the QILDRO legislation. In the instant case, the trial court retained the authority to enforce the settlement agreement, just as it could have directed SURS at the time of the dissolution order to direct pension payments to Marie.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed and the cause remanded for proceedings in keeping with our disposition.

Reversed and remanded.

SCHMIDT and McDADE, JJ., concur.