2026 IL App (2d) 240586-U
No. 2-24-0586
Order filed March 18, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

*In re Marriage of* ELIZABETH VACCARIELLO, Petitioner-Appellant, and DEBORAH WARDA, Respondent-Appellee.

Appeal from the Circuit Court of Kane County.
Honorable Kimberly M. DiGiovanni, Judge, Presiding.
No. 20-D-343

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court did not err in characterizing as marital property all of the growth during the marriage in petitioner's premarital profit sharing plan, where petitioner's evidence consisted of her own testimony and uncorroborated calculations. Affirmed.

¶ 2   Petitioner, Elizabeth Vaccariello, petitioned to dissolve her marriage to respondent, Deborah Warda.  The court dissolved the parties' marriage, classifying as nonmarital the portion of Elizabeth's interest in a profit sharing plan as of the date of marriage, but characterizing as marital all of the growth in the account during the parties' marriage.  Elizabeth appeals, arguing that the characterization as marital property of all the growth in her account during the marriage was erroneous.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The parties met in 1992 and were married on September 1, 2015. On March 13, 2020, Elizabeth petitioned for dissolution of the parties' marriage. Trial commenced on February 27, 2024.

¶ 5    The parties stipulated to the admission of certain documents in their exhibits lists, including Elizabeth's profit sharing plan statements from 2015 through 2020 and 2023. On some of the statements, Elizabeth's handwritten notes showed her calculation of pre- and post-marital amounts. Other stipulated documents Elizabeth prepared, printed on company letterhead, break down the balances for the premarital portion of the plan, Elizabeth's nonmarital and marital portions, and Deborah's allocated marital portion.

¶ 6                                    1. Elizabeth

¶ 7    Elizabeth testified that, in 1989 or 1990, she began working as an employee/accountant at D. Varey and Company, an accounting firm in Hampshire. In 1997, she became a certified public accountant. She paid $1,000 for 1,000 shares in the company. Downey R. Varey was the only other partner in the company, and he, too, owned 1,000 shares. Varey retired in 2016 or 2017. Presently, the company is known as E. Vaccariello and Company, PC.

¶ 8    Elizabeth further testified that, when she began working at D. Varey, she had a retirement plan, specifically, a profit sharing plan. She first contributed to the plan during her second year of employment (*i.e.*, 1990 or 1991). The plan's assets were pooled, and every plan participant chose investments based on their contributions. At the time of her marriage to Deborah in 2015, the value of her interest in the plan was about $1,034,960. D. Varey and Elizabeth oversaw the plan and, later, Elizabeth oversaw it on her own. There were some segregated accounts in the plan, specifically, "some segregated investments and pooled investments." (She later clarified that she meant "allocated" instead of "segregated.")

¶ 9 After the marriage, Elizabeth separated funds she received, allocating them to a "marital pile." These funds were separate and apart from the funds in the account prior to the marriage. As of trial, the separate funds that Elizabeth sought to have allocated as marital property were valued at around $70,328.

¶ 10 Elizabeth further testified that no independent accounting firm audits the plan. The allocations and values were assigned by Elizabeth. In most cases with respect to the plan, "it's in one account and possibly pooled and then allocated within the pile, the pot." Elizabeth explained that there is no segregated/allocated account within the profit sharing plan that she considers the marital portion. Rather, it is a "virtual separate account but part of the pool." It was funded through corporate contributions. As of trial, the value of her plan account is $1.686 million.

¶ 11 Next, addressing loans taken from her plan account, Elizabeth testified that, in 2016, she took out two loans from the marital portion ($30,000 and $20,000). For the $30,000 loan, Elizabeth obtained Deborah's signature for the loan documentation. That loan has not been repaid, nor have any amounts been put toward the loan. For the $20,000 loan, there was similar documentation, and no portion of that loan has been repaid. Elizabeth used $345,000 from the nonmarital portion of her account to purchase property in Norridge in 2020.

¶ 12                                  2. Deborah

¶ 13 Deborah testified that she was unaware of $50,000 in loans taken from Elizabeth's profit sharing plan account.

¶ 14                              3. Closing Arguments

¶ 15 During closing arguments, Elizabeth's counsel argued that Elizabeth was entitled to the nonmarital portion of the profit sharing account, along with the growth thereon during the marriage. Counsel noted Elizabeth's testimony and her position as plan administrator and pointed

to the statements reflecting how the accounts were allocated in the plan, with the segregation/allocation of premarital funds, the growth thereon, and the marital funds. Elizabeth sought $1.686 million as her nonmarital portion of the plan and asserted that the marital portion was $70,328.42 (as of October 2023 and minus the $30,000 loan; a loan document contained Deborah's signature).

¶ 16    Deborah's counsel argued that the court should take the value as of the date of marriage and then the value as of trial and "that portion is marital, and divide it appropriately based on that. Because the amount of monies were commingled, there's not a significant—an appropriate tracing, so the entire [$651,624.42] should be marital and divided equitably." Counsel further argued that the documents admitted into evidence were created by Elizabeth, the plan was controlled by her, and there was no independent accounting or audit of the plan. Thus, no neutral third party oversaw the funds or could give an accurate picture of what portion of the funds were marital or nonmarital. (Deborah also asserted as an example of Elizabeth's "unchecked control" of the plan that she was able to take out loans from the plan without any repayment and to purchase property in Norridge.) Counsel asserted that the only unequivocal fact was that the value of the plan at the time of marriage was $1.034 million and the value as of October 2023 was $1.686 million. Elizabeth, counsel argued, failed to trace which investments were made within the plan, and which were made with funds prior to and after the marriage. Deborah sought an order finding that $651,624.42 (the change in value since the date of marriage) was marital.

¶ 17                                    4. Trial Court's Order

¶ 18    On May 1, 2024, the trial court found that, at the time of the parties' marriage, the nonmarital portion of Elizabeth's profit sharing plan was worth $1,034,960, and it awarded this amount to Elizabeth. Next, the court found that Elizabeth failed to rebut the statutory presumption

that the change in value after the marriage was marital. It determined that the change in value of the plan account from the date of marriage through the date of judgment was marital property, to be divided 60%/40% in Deborah's favor ($651,624.42). The court noted that the marriage was short term, but that Elizabeth had a much larger nonmarital estate. The court found that the value of the profit sharing plan increased during the marriage. However, it found that there was no evidence that distinguished the increase or decrease in investments. It also determined that Elizabeth would be responsible for the $20,000 loan from the plan and that both parties would be equally responsible for the $30,000 loan.

¶ 19                                      5. Motion to Reconsider

¶ 20      On September 11, 2024, the court denied that portion of Elizabeth's motion to reconsider concerning the profit sharing plan, wherein she argued that the growth on the nonmarital share during the marriage was her nonmarital property. She noted that her exhibit was entered into evidence without objection and that Deborah stipulated to the profit sharing plan statements and provided the same statements as her own exhibit. Elizabeth further asserted that, under the trial court's assumption, the marital portion increased in value from zero on September 1, 2015, to about $651,000 on May 1, 2024, with less than $50,000 in contributions during the marriage, all while the nonmarital portion of over $1.034 million made zero over the same time. Deborah responded that the only evidence presented at trial were incomplete plan statements and self-generated documents prepared by Elizabeth without third-party evidence to support the statements contained therein. She also relied on a statutory provision that pension benefits acquired after a marriage are presumed to be marital property.

¶ 21      The court denied the motion, and there is no report of proceedings or bystander's report for the date on which the court entered its order. Elizabeth appeals.

¶ 22                                    II. ANALYSIS

¶ 23    Elizabeth argues that: (1) the trial court misapplied the law by failing to classify her entire profit sharing plan account as her nonmarital property; (2) alternatively, even if the court properly classified the account as marital property (save for the $1.034 million existing prior to the marriage), it failed to determine the portion of growth attributable to Elizabeth's nonmarital property in the account; (3) alternatively, the court erred in classifying as marital all of the growth in the profit sharing plan account during the marriage; and (4) the trial court misapplied the law by failing to determine the present value of the nonmarital and marital portions of Elizabeth's account.

¶ 24    A court's classification of property will not be reversed, unless it is against the manifest weight of the evidence. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44. A decision is against the manifest weight of the evidence where it is unreasonable. *Id.* The standard of review is deferential because the characterization of an asset generally depends upon assessing witness credibility. *In re Marriage of Joynt*, 375 Ill. App. 3d 817, 819 (2007).

¶ 25    Section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503 (West 2022)) governs the disposition of property and debts in a dissolution-of-marriage proceeding. *In re Marriage of James*, 2018 IL App (2d) 170627, ¶ 20. Before a court may dispose of property upon the dissolution of the marriage, it must determine whether that property is marital or nonmarital. *In re Marriage of Henke*, 313 Ill. App. 3d 159, 166 (2000).

¶ 26    Section 503(a) of the Act defines "marital property" as "all property, including debts and other obligations, acquired by either spouse subsequent to the marriage," except for various categories of property. *Id.* § 503(a). These categories, which are known as "non-marital property," include, as relevant here: (1) "property acquired before the marriage, except as it relates to

retirement plans that may have both marital and non-marital characteristics" (*id.* § 503(a)(6)); (2) "the increase in value of non-marital property, irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a spouse, or otherwise, subject to the right of reimbursement provided in subsection (c) of this Section" (*id.* § 503(a)(7)); and (3) "income from property acquired by a method listed in paragraphs (1) through (7) of this subsection if the income is not attributable to the personal effort of a spouse" (*id.* § 503(a)(8)).

¶ 27 Section 503(b) of the Act governs the distribution of property and provides, in relevant part:

"(b)(1) For purposes of distribution of property, *all property* acquired by either spouse after the marriage and before a judgment of dissolution of marriage or declaration of invalidity of marriage *is presumed marital property*. This presumption includes non-marital property transferred into some form of co-ownership between the spouses, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property. The presumption of marital property is overcome by showing through clear and convincing evidence that the property was acquired by a method listed in subsection (a) of this Section or was done for estate or tax planning purposes or for other reasons that establish that a transfer between spouses was not intended to be a gift.

(2) For purposes of distribution of property pursuant to this Section, *all pension benefits* (including pension benefits under the Illinois Pension Code, defined benefit plans, defined contribution plans and accounts, individual retirement accounts, and non-qualified plans) acquired by or participated in by either spouse after the marriage and before a judgment of dissolution of marriage or legal separation or declaration of invalidity of the

marriage are *presumed to be marital property*. A spouse may overcome the presumption that these pension benefits are marital property by showing through clear and convincing evidence that the pension benefits were acquired by a method listed in subsection (a) of this Section. The right to a division of pension benefits in just proportions under this Section is enforceable under Section 1-119 of the Illinois Pension Code." (Emphases added.) *Id.* § 503(b)(1), (2).

¶ 28 The party claiming that property is nonmarital carries the burden of proof, and any doubts about the nature of the property will be resolved in favor of a finding that the property is marital. *Romano*, 2012 IL App (2d) 091339, ¶ 45. It is the burden of the party who claims the property is nonmarital to rebut the presumption with clear and convincing evidence. *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶ 51. Clear and convincing evidence is a higher standard of proof than a preponderance of the evidence but not quite as high as the beyond-a-reasonable-doubt standard in criminal cases. *In re Marriage of Wechselberger*, 115 Ill. App. 3d 779, 786 (1983). After the trial court classifies the property, it awards each spouse their nonmarital property and divides the marital property into just proportions. 750 ILCS 5/503(d) (West 2022).

¶ 29 Elizabeth argues that the trial court misapplied the law by failing to classify the profit sharing account as her nonmarital property, including all growth in the account. Specifically, she asserts that, while the court correctly found that the nonmarital portion of the plan at the time of marriage was over $1.034 million and awarded that amount to Elizabeth as her separate property, it erred in classifying as marital the change in value in the account from the date of marriage until the date of the dissolution judgment. Elizabeth maintains that case law reflects that courts addressing profit sharing accounts that pre-existed a marriage have classified increases in the value of such accounts as nonmarital property pursuant to section 503(a)(7), subject to the marital

estate's right of reimbursement under section 503(c)(2). See *In re Marriage of DiAngelo*, 159 Ill. App. 3d 293, 296-97 (1987) (holding that the increase in value of the petitioner's premarital profit sharing/IRA account and pension account was the petitioner's nonmarital property under section 503(a)(7) because the petitioner never transferred the accounts into any form of co-ownership with the respondent; thus, the trial court had correctly found that the accounts were entirely the petitioner's nonmarital property; however, reversing and remanding because the trial court did not make findings regarding the source of the increase in value of the accounts, where the increase in value is subject to a right of reimbursement under 503(c)(2)); *In re Marriage of Leisner*, 219 Ill. App. 3d 752, 764-65 (1991) (holding that, at the time of marriage, the respondent's profit sharing plan was the respondent's nonmarital property (pursuant to section 503(a)(6) of the Act), and the increase in value during the marriage, regardless of its source, was also the respondent's nonmarital property, subject to the right of reimbursement under section 503(a)(7); further holding that the trial court properly reimbursed the marital estate for the contributions it made to the plan and for the earnings on those contributions, but it erred in granting to the marital estate the increase in value in the plan that resulted from earnings on what the petitioner had contributed prior to the marriage, which was not subject to the right of reimbursement, where trial court had evidence from which it could apportion the annual earnings between those monies contributed prior to and after the marriage; thus, its finding that all the increase in value of the plan after the marriage was marital property was contrary to the evidence); see also *In re Marriage of Raad*, 301 Ill. App. 3d 683, 686-87 (1998) (holding that the value of the petitioner's retirement plan account as of date of marriage was her nonmarital property under section 503(a)(6)); contributions during marriage were marital property under case law; increase in value attributed to the nonmarital portion was nonmarital property, and increase in value attributable to the marital property was marital property under

*Leisner* and *Di Angelo*; directing court on remand to determine the right of reimbursement under section 503(c)(2); the nonmarital property and the increase in value attributed to that amount was subject to reimbursement under section 503(c)(2)—if increase resulted from a contribution of the marital estate, estate was entitled to reimbursement).

¶ 30    Elizabeth argues that the analysis here should be no different than that in *DiAngelo* and *Leisner*: she possessed the profit sharing plan account prior to the marriage, rendering it nonmarital property under section 503(a)(6). Any increase in value to that account—whether passive (through appreciation) or active (through contributions)—should have been nonmarital under section 503(a)(7). Elizabeth contends that the trial court misapplied the law in failing to classify her entire account, including all growth during the marriage, as her nonmarital property. Because the account existed prior to the marriage, she urges, section 503(a)(6) requires that the account be classified as her nonmarital property.

¶ 31    Elizabeth further argues that the evidence established that the account increased in value during the marriage and, as of October 1, 2023, consisted of assets over $1.686 million. This increase during the marriage, she asserts, was also her nonmarital property, regardless of the source of the contributions pursuant to section 503(a)(7) and subject to a right of reimbursement. Elizabeth also contends that the same nonmarital classification is required under section 503(a)(8) for all income generated in the account during the marriage stemming from nonmarital account assets, including the $1,034,960 balance prior to the marriage. Thus, she reasons, the profit sharing plan account should have been classified as her nonmarital property and awarded to her under section 503(d).

¶ 32    Deborah responds that section 503(b)(2), which provides that there is a presumption that pension benefits acquired by or participated in by either spouse after the marriage are marital

property, controls and that Elizabeth failed in her proofs to show by clear and convincing evidence any of the section 503(a)categories. Thus, she argues, sections 503(a)(6) and (7) are not relevant here.

¶ 33    We conclude that the trial court did not err in allocating as marital property all of the growth in the profit sharing account during the marriage. The profit sharing plan is, as testified to by Elizabeth, a retirement plan. Section 503(a)(6) provides that retirement plans may have both marital and nonmarital characteristics. Section 503(b)(2) specifically addresses "pension benefits," which are broadly defined and explicitly include, as relevant here, "defined contribution plans," such as the profit sharing plan. 750 ILCS 5/503(b)(2) (West 2022); see *In re Marriage of McLean*, 2025 IL App (5th) 250094, ¶ 57 (noting that, generally, a profit sharing plan is a type of defined contribution plan). It provides that pension benefits acquired by or participated in during the marriage are presumptively marital property and that this presumption may be rebutted by clear and convincing evidence that the benefits were acquired by a method listed under section 503(a). 750 ILCS 5/503(b)(2) (West 2022). Thus, it was Elizabeth's burden to rebut the presumption here that benefits she earned in the profit sharing plan during the marriage were marital property.

¶ 34    The cases upon which Elizabeth relies to argue that section 503(a)(7) primarily controls are not helpful to our analysis because they pre-date the addition of section 503(b)(2) to the Act. P.A. 90-731, § 10, eff. July, 1, 1999, (designating section 503(b)(1) and adding 503(b)(2) relating to the recognition of pension benefits as marital property subject to division); see also *Rafferty-Plunkett v. Plunkett*, 392 Ill. App. 3d 100, 104 (2009) ("It is now well settled that retirement benefits are presumed to be marital property to the extent that the beneficial interest was acquired during the marriage, a concept acknowledged in the 1999 amendment to section 503(b)(2) of the Marriage Act."). Thus, Elizabeth's cases do not consider that statute.

¶ 35   *McLean*, 2025 IL App (5th) 250094, is helpful to illustrate the proper analysis.  There, the husband participated in, among others, the AT&T retirement savings plan beginning before the marriage, and the parties agreed that the pre-marriage portion was the husband's nonmarital property.  Addressing the distribution of the savings plan account, the reviewing court noted section 503(b)(2)'s rebuttable presumption that pension benefits acquired by or participated in during the marriage are marital property.  *Id.* ¶ 51.  The court noted that any increase in the value of the husband's premarital contributions would be nonmarital under section 503(a)(7) and that pension benefits attributable to contributions during the marriage were marital.  *Id.* ¶ 54.  The parties in that case presented competing valuation methods, and the trial court employed a widely used formula to apportion the plan funds.  The reviewing court concluded that this did not constitute an abuse of discretion.  *Id.* ¶ 59.

¶ 36   Here, Elizabeth's evidence to rebut the presumption under section 503(b)(2) consisted of her handwritten notes on plan statements and printed calculations on firm letterhead that she prepared showing the breakdown of the alleged "virtual" separate marital and nonmarital accounts allocated to the parties.  She asserts that the stipulated-to documents and her unrebutted testimony warranted a finding that the growth on her $1,034,960 nonmarital portion was her nonmarital property.  We disagree.  The stipulated documents do not have the evidentiary weight Elizabeth ascribes to them.  The parties stipulated to the admission of the exhibits relating to the profit sharing plan.  The allocation of Elizabeth's profit sharing account was a disputed issue at trial, and the record does not reflect that the parties stipulated to the accuracy of the alleged virtual account information in the documents, including Elizabeth's calculations.

¶ 37   The trial court found that Elizabeth did not meet her burden, and we cannot conclude that this determination was unreasonable.  Elizabeth testified that each employee's interest in the profit

sharing account is "virtually" allocated based on when contributions went into the plan, pursuant to the plan's procedure. However, there is no copy of the plan document in the record to substantiate Elizabeth's testimony concerning the plan's alleged process of virtually segregating funds therein. Elizabeth's testimony that hers and Deborah's funds were segregated into separate accounts was supported only by her own calculations, which were not verified by any independent third party. See *In re Marriage of Malters*, 133 Ill. App. 3d 168, 180 (1985) (noting that to properly assess assets, trial court must have before it competent evidence of value). The trial court was free to reject the self-serving evidence and find her testimony incredible. See, *e.g.*, *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶¶ 46-47 (wife's uncorroborated response to leading question from her counsel as to nonmarital source of funds did not constitute clear and convincing evidence sufficient to overcome presumption of marital property; bare assertion of nonmarital source of funds, in absence of supporting documentary evidence, such as account records, deposit slips, and cancelled checks, does not constitute clear and convincing evidence); *In re Marriage of Dhillon*, 2014 IL App (3d) 130653, ¶ 32 (husband's testimony, which trial court found incredible, was insufficient to meet his burden of tracing funds in account by clear and convincing evidence). We cannot conclude that the trial court's assessment was unreasonable.

¶ 38    Next, Elizabeth offers several alternative arguments, but we conclude that they are forfeited. First, she alternatively argues that, even if section 503(a)(7) does not expressly require the nonmarital classification of the account and all increases in value therein, the trial court erred in failing to classify the account and the appreciation therein as Elizabeth's nonmarital property under section 503(c)(1), which governs the classification of commingled property. 750 ILCS 5/503(c)(1) (West 2022). She contends that section 503(c)(1)(A)(i) requires the nonmarital classification of the profit sharing plan because, when Elizabeth contributed marital funds to the

nonmarital account, those funds lost their marital identity under the statute and transmuted to the receiving estate—her nonmarital property. *Id.* § 503(c)(1)(A)(i) (providing that where marital and nonmarital property are commingled with one estate being contributed to the other, if the contributed property loses its identity, the contributed property transmutes to the receiving estate, subject to reimbursement). Thus, the entire profit sharing plan account, including all growth therein, remained her nonmarital property, regardless of any marital contributions. Also, Elizabeth maintains that, because the marital contributions here were in the nature of remuneration, not personal efforts, section 503(c)(2)(A) is also implicated. *Id.* § 503(c)(2)(A) (providing that, when one estate makes a contribution to another estate, the contributing estate shall be reimbursed from the estate receiving the contribution, notwithstanding any transmutation; no reimbursement is permitted for contributions that are not traceable by clear and convincing evidence or in cases where there was a gift). We decline to address section 503(c)(1)(A) commingling and section 503(c)(2)(A) reimbursement because, neither at trial, nor in her motion to reconsider did Elizabeth raise these provisions. She made only a passing reference to "the right of reimbursement under" section "503(c)" in her motion to reconsider, did not expand and explain its application in this case (or reference any evidence she presented on it), and there is no transcript of the parties' arguments from the hearing on her motion to reconsider to show if she raised and elaborated on this argument during that hearing. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (appellants bear the burden of providing a sufficiently complete record to support their claim or claims of error, and in the absence of such a record on appeal, we will presume that the order entered by the trial court was in conformity with law and had sufficient factual basis). Accordingly, Elizabeth's argument is forfeited. *In re Marriage of Schneeweis*, 2016 IL App (2d) 140147, ¶ 51.

¶ 39    Second, Elizabeth argues that the trial court erred in failing to determine the marital value of the profit sharing account in contravention of section 503's directive that the court "make specific factual findings as to *** values, and other factual findings supporting its property award." 750 ILCS 5/503(a) (West 2022). She specifically contends that the court found only that a 60%/40% division of the marital portion of the profit sharing plan account was proper without specifying, for example, what the 40% was valued at. The insufficient factual findings show that it failed to consider the statutory factors in the marital division and that this would require a remand for the court to determine the present value of the marital and nonmarital portion of the account. We decline to address this issue because Elizabeth did not raise it below. Accordingly, it is forfeited. *Schneeweis*, 2016 IL App (2d) 140147, ¶ 51.

¶ 40                                    III. CONCLUSION

¶ 41    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 42    Affirmed.